FILED

May 10 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 10-0346

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 99

COLSTRIP ENERGY LIMITED
PARTNERSHIP, a Montana limited
partnership,

        Plaintiff and Appellant,

  v.

NORTHWESTERN CORPORATION, a
Delaware corporation,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
                In and For the County of Rosebud, Cause No. DV 07-57
                Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Ward E. Taleff, Taleff Law Office, P.C., Great Falls, Montana

        For Appellee:

                Charles E. Hansberry, Stephen R. Brown, Garlington, Lohn
                & Robinson, PLLP, Missoula, Montana

                Michael R. Engleman, Leon B. Kellner, Dickstein Shapiro, LLP,
                Washington, DC

Submitted on Briefs:  February 16, 2011

Decided:  May 10, 2011

Filed:

_____

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Colstrip Energy Limited Partnership (CELP) appeals an order of the District Court for the Sixteenth Judicial District Court, Rosebud County, denying CELP's motion to vacate the arbitration award in its dispute with Northwestern Corporation (Northwestern). We affirm.

¶2 CELP raised the following issues on appeal:

¶3 1. Was it permissible for the arbitrators to find the parties' contract requires the use of specific variables to calculate rates but then fail to apply those required contract variables in the two years in question to avoid awarding damages?

¶4 2. Did the arbitrators exceed their powers when their award relied on the "intent" of sophisticated parties to an unambiguous contract instead of interpreting the contract as written?

¶5 3. Did the arbitrators exceed their powers when they issued an award based on their sense of equity rather than enforcing the parties' contract as written?

¶6 4. Was the District Court's failure to vacate the arbitration award an abuse of discretion where the arbitrators exceeded their powers?

### Factual and Procedural Background

¶7 CELP is a Montana limited partnership which owns an electrical generating plant in Rosebud County. Northwestern is a Delaware corporation and a regulated public utility conducting business in Montana. Under federal and Montana law, utilities such as Northwestern are obligated to purchase electricity from small generating facilities such as

3

CELP. *See* 16 U.S.C. § 824a-3(a)(1) (the Public Utility Regulatory Policies Act (PURPA)), 18 C.F.R. § 292.207, and Title 69, chapter 3, part 6, MCA. Rates under PURPA are based on the concept of "avoided costs"—the costs at the onset of a power purchase agreement that the utility avoids by purchasing power from a qualified facility rather than building a power plant to produce it. The Montana Public Service Commission (PSC) oversees the implementation of PURPA in Montana.

¶8 In 1984, CELP's predecessor, AEM Corporation (AEM), entered into a Power Purchase Agreement (the Agreement) with the Montana Power Company (MPC) for the sale of energy and capacity from the Rosebud County facility for a term of 35 years. In March 1988, following the issuance of numerous orders by the PSC implementing PURPA, AEM and MPC executed a First Amendment to the Agreement. The First Amendment altered the payment scheme under the Agreement by providing that in contract years one through fifteen, AEM would essentially receive a fixed rate for electrical generation. Beginning in the sixteenth contract year, AEM's annual rates were to be based upon a formula which adopted specific mandatory variables and methods contained in PSC Orders 5017 and 5017a issued in 1983. These rates were to be approved annually by the PSC. The rate formula adopted in the First Amendment required an annual adjustment by comparing the variables in the new contract year with the variables from the immediately preceding contract year's final approved PSC rates. CELP and Northwestern are the successors to those contracts.

¶9 Eventually, a dispute arose between CELP and Northwestern regarding the contractual methodology used to calculate CELP's contract rates for energy and capacity

4

for contract years sixteen and seventeen (July 1, 2004 through June 30, 2006). These were the first years CELP's rates were subject to the formula contained in the First Amendment rather than the fixed rate.

¶10 Sometime in 2007, Northwestern advised CELP that it intended to deduct more than $1 million from its next payment to CELP because of alleged overpayments made by Northwestern for contract years sixteen and seventeen. In response, CELP filed this action challenging Northwestern's claimed offset on the basis that Northwestern had created its alleged overpayment by using the wrong variable to determine the rates to be paid to CELP. In its cause of action, CELP sought roughly $22 million in damages from Northwestern and alleged, among other things, breach of contract; breach of the implied covenant of good faith and fair dealing; negligent misrepresentation; violation of due process; deceit; actual fraud; constructive fraud; and abuse of process. CELP also sought judicial review of two orders of the PSC filed under the Montana Administrative Procedure Act.

¶11 Northwestern moved to compel arbitration of CELP's claims based on the arbitration provision in the Agreement. The District Court ordered CELP's cause of action against the PSC bifurcated from its action against Northwestern and ordered CELP and Northwestern to arbitration. Northwestern did not raise any counterclaims in the arbitration.

¶12 Over the course of a nearly one-year long arbitration proceeding before a panel of three arbitrators (the Panel), each party presented its case regarding the proper interpretation of both the Agreement and the First Amendment. The arbitration

proceedings included a five-day arbitration hearing in San Francisco with testimony from several expert witnesses and significant questioning by the Panel. It also included extensive pre- and post-hearing briefing.

¶13 On August 24, 2009, the Panel issued its Interim Award addressing all of CELP's counts against Northwestern, reserving for the Final Award only the question of whether either party was entitled to costs and fees as the prevailing party under § 29 of the Agreement. The Panel denied CELP's contract and tort damage claims as well as all other relief sought by CELP noting that it was troubled by the manner in which CELP shifted its arguments in an effort to manufacture a damage case. The Panel concluded that although Northwestern breached the parties' contract, CELP failed to prove that this breach caused CELP to suffer compensable damages or underpayments, or that the breach entitled CELP to any other relief.

¶14 The Panel issued its Final Award on October 30, 2009, incorporating almost verbatim the text of the Interim Award. In addition, CELP had sought recovery of its legal fees and arbitration expenses from the Panel, but the Panel denied that request. Instead, the Panel determined that because the relief awarded was of a "mixed nature" in that both CELP and Northwestern gained "victories" and suffered "losses," each party should bear its own legal fees and other litigation expenses incurred in arbitration.

¶15 Northwestern filed a motion with the District Court seeking to confirm the arbitration award while CELP sought to have it vacated. Originally, CELP moved to modify or correct the Final Award, but at a hearing on the parties' competing motions, CELP argued that the Final Award must be vacated in its entirety because it was not

"fixable in terms of modification, unless you throw out the vast majority of the arbitration award." CELP did not challenge the Panel's failure to award fees and costs.

¶16 The District Court confirmed the Final Award by order dated June 15, 2010. In its order, the District Court found that CELP failed to cite to any factual evidence or legal precedent showing that the Panel had disregarded clear Montana law or exceeded the authority conferred on the Panel by the parties' Agreement, the District Court's order directing the parties to arbitrate, or the scope of the questions presented to the Panel by CELP. CELP now appeals that ruling.

**Discussion**

¶17 Judicial review of an arbitration award is strictly limited by statute in Montana. *Dick Anderson Construction, Inc. v. Monroe Construction*, 2009 MT 416, ¶ 26, 353 Mont. 534, 221 P.3d 675 (hereinafter "*DAC*") (citing *Paulson v. Flathead Conservation Dist.*, 2004 MT 136, ¶ 18, 321 Mont. 364, 91 P.3d 569; *Terra West v. Stu Henkel Realty*, 2000 MT 43, ¶ 22, 298 Mont. 344, 996 P.2d 866; *Nelson v. Livingston Rebuild Center, Inc.*, 1999 MT 116, ¶ 11, 294 Mont. 408, 981 P.2d 1185). Montana's Uniform Arbitration Act (Title 27, chapter 5, MCA) provides that a district court must confirm an arbitration award upon application of a party unless timely urged to vacate or modify the award. *DAC*, ¶ 26 (citing *May v. First Nat. Pawn Brokers, LTD.*, 269 Mont. 19, 22, 887 P.2d 185, 187 (1994); § 27-5-311, MCA). When a matter has been submitted to binding arbitration, courts are not permitted to review the merits of the controversy, but may only confirm, vacate, modify, or correct an arbitration award pursuant to §§ 27-5-311, -312, and -313, MCA. *DAC*, ¶ 26 (citing *Paulson*, ¶ 18; *Nelson*, ¶ 11). Furthermore, the party

7

seeking to vacate, modify, or correct an arbitration award bears the burden of proving that one of the statutorily enumerated grounds exists. *DAC*, ¶ 26 (citing *Duchscher v. Vaile*, 269 Mont. 1, 6, 887 P.2d 181, 184 (1994)).

¶18 We review a trial court's decision to confirm an arbitration award to determine if the court abused its discretion. *DAC*, ¶ 19 (citing *Terra West*, ¶ 22). The test for an abuse of discretion is whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice. *DAC*, ¶ 19 (internal quotation marks omitted) (citing *In re Custody and Parental Rights of C.J.K.*, 2005 MT 67, ¶ 13, 326 Mont. 289, 109 P.3d 232; *In re KCH*, 2003 MT 125, ¶ 11, 316 Mont. 13, 68 P.3d 788).

¶19 We stated in *DAC* that

> [a]rbitration allows parties to engage decision-makers who are technically skilled or trained in the specific area of industry that is subject to dispute and to expedite the resolution of disputes by avoiding many of the formalities inherent in litigation. Arbitration also provides a more stringent finality to disputes than traditional litigation by limiting the scope of judicial review of an arbitration award.

*DAC*, ¶ 38. Thus, this Court can only review whether the District Court abused its discretion in confirming the arbitration award; we cannot review the merits of the controversy. *DAC*, ¶¶ 19, 26. Consequently, we do not address CELP's first three issues. Instead, we conclude that the dispositive issue in this case is:

> ***Whether the District Court's failure to vacate, modify or correct the arbitration award was an abuse of discretion.***

¶20 CELP contends on appeal that the District Court abused its discretion in failing to vacate or modify the Final Award because the conclusions the arbitrators reached and the

8

award the arbitrators made were inconsistent with their own findings, contrary to the contract, contrary to settled Montana law on interpretation of contracts, and in excess of the scope of the arbitrator's powers. CELP further contends that the arbitrators exceeded their powers by re-writing the Agreement to achieve what they perceived as a fair result rather than employing recognized rules of contract construction to interpret the Agreement.

¶21 However, as already indicated, the question before this Court is not whether the Panel exceeded its authority, as that question was already answered by the District Court. Rather, the question this Court must answer is whether the District Court abused its discretion in concluding that the Panel acted within its authority.

¶22 The Panel determined that Northwestern breached the Agreement and the First Amendment to the Agreement by failing to use in its annual compliance filings submitted to the PSC two criteria from which CELP's contract rates are determined: (1) the Handy-Whitman Index, which the Panel concluded was the contract approved inflation index that must be applied to annually adjust certain variables used to calculate the contractual rate inputs, and (2) an annually determined incremental cost of capital (ICC), which is similarly used to adjust certain contractual rate inputs. Notwithstanding that finding, the Panel denied all of CELP's claims on the basis that CELP failed to prove that Northwestern's breaches of the Agreement caused CELP to suffer compensable damages or underpayments, or that those breaches entitled CELP to any relief.

¶23 In making this determination, the Panel referred to certain requirements specified in the First Amendment and CELP's failure to comply with those requirements in

9

asserting that it had suffered damages as a result of Northwestern's breach. Thus, the

Panel made the following Findings of Fact in its Final Award:

> 23. [PSC] Order 5017, ¶ 50 [which had been incorporated into the First Amendment] further requires that each subsequent year's dollar estimates shall be revised to reflect the previous year's inflation. CELP sought to avoid this general requirement by taking the position that the calculation required for Contract Year 16 must be prepared using new data inputs (Handy-Whitman and a revised ICC which was based on a bankrupt merchant investing in a speculative coal plant) but then compared to the filings for Contract Year 15, which did not use those inputs. Performing the calculation in this manner would yield a huge increase (the "Bump") in the rates to be paid to CELP that is not contemplated or permitted by [the Agreement]. Rather, [the Agreement], properly construed, requires that any such calculation be performed on a consistent basis as between the Contract Year for which the new rate is being calculated and the prior Contract Year's data. . . .
>
> 24. The evidence presented at the Arbitration Hearing failed to establish that CELP suffered any compensable damages or underpayments by reason of NorthWestern's failures to follow contract requirements regarding use of Handy-Whitman and an annually calculated ICC in Contract Years 15, 16, or 17. Rather, the underpayment analysis offered by CELP's expert witness David Branchcomb found underpayments only because the analyses depended on an inconsistent and contractually impermissible comparison of Contract Year 16 to Contract Year 15. As discussed above, [the Agreement] does not permit the comparison required by the First Amendment to be performed in such a manner. The evidence established that if the comparison calculation is performed in a contractually permissible manner, avoiding the Bump, CELP's claim of damages and underpayments in Contract Years 16 and 17 was not proven.
>
> 25. . . . CELP also failed to prove compensable damages or entitlement to any other relief, in support of its tort claims. [Internal citations omitted.]

And, in its Conclusions of Law, the Panel stated the following:

> 6. . . . The evidence established that performing the Contract Year 16 calculation in this manner would embed a sudden and very large jump in the total payments that would be due to CELP thereafter, and that this "Bump" would persist over the remaining life of the contract. The evidence presented did not establish that the original contracting parties intended any such result. The text of the First Amendment, and particularly, the text of

10

[the attachments to the First Amendment] lead us to conclude that [the Agreement] does not authorize or permit any such inconsistent calculation causing such a fortuitous "Bump" in the rates paid to CELP. Rather, we conclude that [the Agreement] requires the comparison between the data for the Contract Year for which the new rate is being calculated pursuant to the First Amendment and the data for the immediately prior Contract Year that must also be considered in the calculation to be performed on a consistent basis using the same methodology and types of inputs.

¶24 In its June 15, 2010 order confirming the Final Award, the District Court explained that this interpretation and result advanced by the Panel "is, at a minimum, a 'plausible' interpretation of [the Agreement] and First Amendment, and is entitled to due deference by this Court."

¶25 The District Court pointed out that in CELP's brief in support of its motion to vacate, CELP stated that it did "not seek to vacate the Final Award, but only to modify and correct it in order to eliminate the inconsistencies within the award and amend it where it disregards clear Montana Law." The court also pointed out that at the April 9, 2010 hearing on the parties' motions, CELP changed its position when it urged the court to vacate the entire Final Award asserting that the Final Award is not "fixable in terms of modification, unless you throw out the vast majority of the arbitration award." Nevertheless, the District Court determined that CELP failed to meet its burden to establish any of the statutory grounds for either vacating or modifying the Final Award; thus, the court concluded that confirmation of the Final Award was appropriate.

¶26 We conclude that the District Court did not abuse its discretion in denying CELP's motion to vacate, modify or correct the Final Award. First, as to CELP's contention that the District Court should have amended the Final Award, Montana's Uniform Arbitration

11

Act does not permit a court to vacate an arbitration award in part. *DAC*, ¶ 34 ("there is no provision in the arbitration statutes for vacating a *portion* of an arbitration award").

¶27 Second, Montana law is clear that a non-breaching party is still required to prove its damages. *Knucklehead Land Co. v. Accutitle, Inc.*, 2007 MT 301, ¶ 31, 340 Mont. 62, 172 P.3d 116. Even CELP conceded in its brief on appeal that "[i]t is well within the authority of the trier of fact to find that a defendant had a duty, breached it, and caused injury to the plaintiff, and yet award no compensation when the plaintiff failed to adequately prove damages."

¶28 Third, as to CELP's motion to modify or correct the Final Award, the grounds for modifying or correcting an arbitration award are set forth in § 27-5-313, MCA:

> **Modification or correction of award by court.** (1) Upon application made within 90 days after delivery of a copy of the award to the applicant, the district court shall modify or correct the award if:
> (a) there was an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award;
> (b) the arbitrators awarded upon a matter not submitted to them and the award may be corrected *without affecting the merits of the decision* upon the issues submitted; or
> (c) the award is imperfect in a matter of form *not affecting the merits of the controversy*. [Emphasis added.]

¶29 The District Court correctly noted in its order confirming the Final Award that the legal precedent on which CELP relies for its request to modify or correct the Final Award—that the Panel exceeded its authority—applies only to motions to vacate an award. Under § 27-5-313, MCA, modification is restricted to matters that do not affect the merits of the controversy and efforts to overturn an arbitrator's damage findings are beyond the scope of modification. In this case, the Panel's findings regarding CELP's

damages are material to the Final Award and relate to the merits of the Panel's findings with respect to CELP's claims against Northwestern because CELP included those damage claims within the scope of its arbitration demand. Hence, the District Court correctly denied CELP's motion to modify or correct the Final Award.

¶30 Fourth, as to CELP's motion to vacate the Final Award, the grounds for vacating an arbitration award are set forth in § 27-5-312, MCA:

> **Vacating an award.** (1) Upon the application of a party, the district court shall vacate an award if:
> (a) the award was procured by corruption, fraud, or other undue means;
> (b) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
> (c) *the arbitrators exceeded their powers*;
> (d) the arbitrators refused to postpone the hearing upon sufficient cause being shown or refused to hear evidence material to the controversy or otherwise conducted the hearing, contrary to the provisions of 27-5-213, in a manner that substantially prejudiced the rights of a party;
> (e) there was no arbitration agreement and the issue was not adversely determined in proceedings under 27-5-115 and the party did not participate in the arbitration hearing without raising the objection; or
> (f) a neutral arbitrator failed to make a material disclosure required by 27-5-116. An award may be vacated because of a material noncompliance with 27-5-116 no later than 90 days following discovery of the failure to disclose. [Emphasis added.]

¶31 In this case, CELP alleged that the Panel exceeded its authority by re-writing the Agreement to achieve what the Panel perceived as a fair result rather than employing recognized rules of contract construction to interpret the Agreement. However, the District Court noted that in making this argument, CELP did not cite to any evidence in the record that the Panel manifestly disregarded Montana law. Citing *Geissler v. Sanem,* 285 Mont. 411, 417-18, 949 P.2d 234, 239 (1997), the court explained that the

13

challenging party must demonstrate through evidence in the record that the "arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it." The court determined that there was "no evidence in the record to support the argument that the Panel was aware of a clearly governing principle of law and nevertheless ignored it in reaching its decision." The court also stated that "CELP has failed to show that the Panel's rulings exceeded the authority vested in them by the broad arbitration referrals in the parties' Agreement, the Arbitration Referral Order, and CELP's own Demand for Arbitration." Therefore, the court correctly determined that it lacked the authority to vacate the Final Award.

¶32 Accordingly, we hold that the District Court's confirmation of the Final Award was proper and well within its discretion.

¶33 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER

14