JUSTICE McKINNON,
concurring in part and dissenting in part.
¶36 I disagree with the Court’s resolution of Issues Two and Three. I agree with the Court’s resolution of Issue One, but nevertheless find parts of the Court’s analysis troubling. Preliminarily, however, proper resolution of Issues Two and Three turns on adherence to the standard of review. A district court’s evidentiary rulings are reviewed for an abuse of discretion. An abuse of discretion is not whether this Court would have reached the same decision, but whether the district court “acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice.” Colstrip Energy L.P. v. Nw. Corp., 2011 MT 99, ¶ 18, 360 Mont. 298, 253 P.3d 870.
¶37 Martin filed a motion in limine arguing against BNSF’s use of evidence of earnings from his law enforcement consulting business for services provided to the Rocky Boy Tribe between March 2006 and February 2011. More specifically, BNSF maintained that Martin’s employment with BNSF was secondary to his consulting services, and that this was demonstrated by examining the inverse relationship between an increase in earnings from consulting and a decrease in earnings from BNSF. BNSF also maintained that the earnings from Martin’s consulting business demonstrated that Martin had no incentive to work for BNSF. Martin argued that BNSF should be limited to only his wage history with BNSF and that BNSF should not be allowed to use earnings from his outside employment to contest his wage-loss claim. However, Martin agreed that BNSF could use several years of BNSF wage history in disputing his wage loss.
¶38 BNSF wanted to demonstrate a trend in Martin’s work history and show that, based upon this history, his claim for earnings for the six-month period following his injury was inflated and exaggerated. *435 Specifically, BNSF argued that: (1) Martin was not available to work full-time for BNSF because he was working full-time in his consulting business, and (2) Martin had an incentive, and indeed had actually chosen, to work for the more lucrative job, given the finite number of hours he was available to work. BNSF maintained that Martin’s earnings from consulting demonstrated that he was actually working 40 hours per week in consulting and averaging 50,000 miles of travel for the years 2008, 2009, and 2010. In each of those years, Martin earned $80,362, $84,060, and $90,663, respectively, fromhis consulting business. BNSF argued that, consequently, Martin could not have worked fiill-time for BNSF. Additionally, the most Martin ever earned from BNSF for any given year during this timeframe was in 2010, whenhe earned $30,613. BNSF sought to show that Martin’s wage-loss claim of $31,500 for a six-month period in 2009 did not fairly represent this work history. BNSF maintained that the amount of Martin’s earnings was very probative and relevant to establish that his claim was over-inflated.
¶39 The District Court considered these arguments and appreciated the unique circumstances of the case before it. Indeed, the court observed that Martin’s earnings from his consulting business were “incredible” and commented “that [it was] a pretty good consulting job.” The Court recognized that the evidence was “very prejudicial,” but nevertheless concluded that the jury needed to place Martin’s wage-loss claim in context, and the matter was best left for cross examination.
I understand you have an objection, but to me that is the context — the jury needs to understand this — I understand the prejudicial value, but I think we need to have the context. You know, we need to talk about the year or two prior, the consulting job, and how it affected his wages when he was off work because of this accident and whether it did or didn’t, you argue it did; they argue it didn’t, or maybe it didn’t as much as you think it did. I think the jury has a right to know that, and including the dollar amount. I get the fact that, hey, the jury is going to go, geez, but I think they need to understand that, the big picture there.
¶40 The parties and the District Court appreciated that Martin’s wage trend and work history were relevant in determining whether Martin was entitled to damages in the full amount of $31,500, which would reflect annual earnings of $63,000 at BNSF. Martin never argued to the District Court that evidence of BNSF wages earned, for example in 2008, were not relevant. At any point in time during which Martin had earnings from his consulting business, Martin’s BNSF wages were no *436 higher than $30,613. The District Court appreciated this and allowed the evidence to be used to demonstrate this particular point, given the unique circumstances of Martin’s “secondary employment.”
¶41 The Court’s decision that the evidence was nevertheless inadmissible is at odds with the standard of review we must employ in resolving evidentiary issues. The District Court appreciated the arguments of counsel and the unique relationship between Martin’s employment history and his wage-loss claim. Similarly, the District Court was committed to letting the jury resolve the dispute and providing them with the evidence to place the claims in proper context. In my opinion, we construe the issue too narrowly and fail to appreciate the arguments made by BNSF as to the relevance of the evidence.
¶42 The Court also is mistaken in drawing a comparison to the collateral source rule. Pursuant to the collateral source rule, when an injured plaintiffhas been compensated for his injuries from a collateral source, the defendant may not benefit from that recovery. Mickelson v. Mont. Rail Link, Inc., 2000 MT 111, ¶ 38, 299 Mont. 348, 999 P.2d 985. However, Martin did not receive compensation from his consulting business for his iryury. Instead, he received compensation for hours and amounts billed, which arguably demonstrates that he was not available to work frill-time as required to substantiate his six-month wage-loss claim. Furthermore, the exclusion of collateral source benefits has the purpose of encouraging individuals to purchase and maintain liability insurance. This purpose does not extend to the current circumstances. The Court misapplies the collateral source rule to the facts of these proceedings and fails to recognize the subtleties, which the District Court appreciated, implicit in BNSFs argument regarding the relevancy of the evidence. Just because the evidence is prejudicial does not mean it should be excluded. I would affirm the District Court, finding that it did not abuse its discretion in allowing the jury to consider evidence of Martin’s earnings from his consulting business.
¶43 As I would affirm the District Court on Issue Three, it is necessary for me to set forth my position regarding Issue Two, concerning evidence of the heated platform. BNSF moved in limine to exclude evidence that the Whitefish platform was reconstructed after Martin’s injury to include a heating element. BNSF argued two reasons for why the evidence ought to be excluded: (1) the evidence was impermissible as a subsequent remedial measure pursuant to M. R. Evid. 407, and (2) evidence of the heated platform was irrelevant because Martin had slipped off the steps and not the platform. BNSF also objected to *437 references to another heated platform in Essex on the basis that it was irrelevant. Martin argued that Amtrak, not BNSF, installed the heated platform, and that BNSF lacked standing to seek exclusion of references to the heated platform as a subsequent remedial measure.
¶44 Prior to trial, the District Court indicated it would be granting BNSF’s motion, stating that it thought the heated platform was a subsequent remedial measure. During a break in Martin’s case, the District Court revisited its ruling after hearing further argument from counsel and considering testimony from several of Martin’s witnesses, and issued the following ruling:
I guess it feels like we’re getting far afield. I haven’t heard Mr. Martin testify yet, but you know, from the first, I think it was his partner, Mr. Anderson, or the engineer, he didn’t really talk about the berm being any real problem, and the slip and fall was actually from the step, so we’re kind of removed from the step. We’re talking about the berm; we’re talking about an action after the incident in question. It, you know, occurs to me — I mean, the heated platform is after the incident in question.... [T]he bigger issue is the plowing or if you have to use hand shovels to take out — I mean, I understand if there’s a big berm ... I can see the danger of that, but I’m not getting any sense that’s what we’re talking about here.
Following more discussion with counsel, the court stated:
And you can talk about that, and I think you can talk about that BNSF had an obligation to make sure the berm wasn’t there or provide a reasonably safe workplace. It just seems like to me it’s a big leap to get to heated platforms. That’s one thing that BNSF potentially could have done, and if they had, apparently somebody is going to testify that there is no berms in that situation, but it just occurs to me that it’s removed from the facts of our case.
Following more argument and discussion with counsel, the court concluded that it was “proper grounds for cross examination. You know, couldn’t you shovel better? Couldn’t you use salt? Couldn’t you put in a heated platform?” Martin’s counsel agreed and said: “That’s fair. They’re sitting there saying, and I think you’re [District Court] probably right to that extent, that if they’re going to sit there and say we did all we could do, we’ve done what’s reasonable, then I have the right to cross.”
¶45 Martin’s counsel never followed through with any cross examination regarding the topic of heated platforms. Assuming there was error created by the District Court in not allowing evidence of the heated platforms, the error is harmless where, as here, the court *438 allowed Martin an alternate method of garnering the information. Williams v. Bd. of Cnty. Comm’rs, 2013 MT 243, ¶ 35, 371 Mont. 243, 308 P.3d 88. Nevertheless, the Court fails to appreciate that, while we observed in Stevens v. Novartis Pharmaceuticals Corp., 2010 MT 282, ¶ 93, 358 Mont. 474, 247 P.3d 244, that M. R. Evid. 407 does not prohibit evidence of subsequent remedial measures taken by non-parties, evidence nevertheless must still be relevant to be admissible. M. R. Evid. 402. It is clear from the District Court’s discussion with the parties and its order that it did not believe the evidence was relevant and that it went “far afield.” Although it appears unclear from the record the extent of BNSF’s involvement with stimulus money apparently used by Amtrak to build the platform, the record is abundantly clear that the District Court determined the evidence was not relevant to the circumstances of Martin’s slip from the locomotive steps. Given the standard of review to be applied and the record of the court’s consideration and discussion of the issue, I cannot conclude that the District Court “acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice.” Colstrip, ¶ 18.
¶46 As a final observation, I cannot agree with the Court’s declaration that “[i]t is axiomatic that if, in fact, Martin slipped on the ice and snow on the locomotive steps, then the ice and snow were a slipping hazard.” Opinion, ¶ 16. This appears to contradict the remaining portion of the paragraph, wherein the Court observes all the reasons why ice and snow do not conclusively establish a slipping hazard. I agree that the District Court did not err in denying Martin’s motions for judgment as a matter of law regarding Martin’s LIA claim. The evidence clearly supported sending the issue to the jury for its consideration.
¶47 For the foregoing reasons, I would affirm the decision of the District Court.