No. DA 06-0165

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 32

_____

BANK OF AMERICA, N.A. (USA),

        Plaintiff and Respondent,

    v.

DOC L. DAHLQUIST,

        Defendant and Appellant.

_____

APPEAL FROM:    The District Court of the Eleventh Judicial District,
               In and For the County of Flathead, Cause No. DV-05-028B,
               Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

               William L. Managhan and Santana Kortum-Managhan,
               Managhan & Kortum-Managhan Law Firm PLLC, Kalispell, Montana

        For Respondent:

               Bruce M. Spencer, Smith Law Firm, P.C., Helena, Montana

_____

                    Submitted on Briefs:  January 17, 2007

                            Decided:  February 7, 2007

Filed:

_____
                   Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Plaintiff Bank of America (BOA) sued Doc Dahlquist, alleging he owed $9,618.62 in credit card debt. Dahlquist filed a motion to dismiss for failure to state a claim, alleging the action was subject to an arbitration award. He also filed a motion to confirm the arbitration award. The District Court first denied the motion to dismiss because the motion lacked a brief. The court later denied the motion to confirm the arbitration award because the arbitration procedure failed to conform to the arbitration agreement. From the denial of his motion to confirm, Dahlquist appeals. We affirm.

¶2 We restate the issue as follows:

¶3 Did the District Court correctly deny Dahlquist's motion to confirm when the arbitration award was issued by an arbitrator other than the one specified in the arbitration agreement, even though BOA failed to dispute the award within ninety days?

## BACKGROUND

¶4 On December 30, 2004, BOA filed a complaint alleging that Dahlquist owed $9,618.62 pursuant to a "Cardmember Agreement" with BOA. Dahlquist did not file an answer, but instead filed a motion to dismiss, and, subsequently, a motion to confirm an arbitration award. The arbitration award had been issued by the National Arbitration Counsel (NAC), an arbitration group based in Florida. NAC had apparently sent BOA two notices of the arbitration proceedings to which BOA did not respond. On November 26, 2003, NAC issued an award for Dahlquist and against BOA for $9,170 on the debt that BOA alleges is owed by Dahlquist. BOA did not move to vacate the award, and in

2

fact did not challenge the award until April 20, 2005, in its response to Dahlquist's motion to confirm.

¶5 The arbitration agreement at issue does not list NAC as a potential arbitrator. Instead the agreement provides that a specific arbitrator, J.A.M.S./Endispute (JAMS), is to be used, and further states that if JAMS is unwilling or unable to serve as arbitrator "we may substitute another national arbitration organization with similar procedures." Additionally, the arbitration agreement provides that it "shall be governed by the Federal Arbitration Act" (FAA).

¶6 The District Court, in its order denying Dahlquist's motion to confirm, concluded that Dahlquist's use of NAC did not conform to the arbitration agreement and thus the NAC arbitration is "not a valid arbitration, and [BOA] is under no obligation to initiate procedures to have the invalid arbitration vacated." From this order, Dahlquist appeals.

## STANDARD OF REVIEW

¶7 We review a district court's conclusions of law, including whether an arbitration award is valid, *de novo*. *See Martz v. Beneficial Montana, Inc.*, 2006 MT 94, ¶ 10, 332 Mont. 93, ¶ 10, 135 P.3d 790, ¶ 10.

## DISCUSSION

¶8 **Did the District Court correctly deny Dahlquist's motion to confirm when the arbitration award was issued by an arbitrator other than the one specified in the arbitration agreement, even though BOA failed to dispute the award within ninety days?**

3

¶9    Dahlquist, focusing primarily upon Montana's Uniform Arbitration Act, §§ 27-5-111 through -324, MCA, claims that BOA has waived the right to challenge the arbitration award issued by NAC because it failed to challenge the award within ninety days.  Under § 27-5-311, MCA, a motion to confirm must be granted by a district court, unless, within ninety days, the award is challenged as provided in §§ 27-5-312 and -313, MCA.  Section 27-5-312(3), MCA, states that "an application [to vacate] must be made within 90 days after delivery of a copy of the award to the applicant."  Further, Dahlquist points out that an invalid arbitration, including where "there was no arbitration agreement," is specifically contemplated under § 27-5-312, MCA.  Thus, under Montana law, BOA had ninety days to challenge the award, even though it claims that the award is invalid because the wrong arbitrator was used.  As BOA has waited much longer than that, Dahlquist insists that BOA is barred from challenging the NAC award and the District Court must confirm the award.

¶10    We disagree with Dahlquist's assessment, primarily because the arbitration agreement at issue, by its terms, is not governed by Montana's arbitration statutes but by the FAA (9 U.S.C. §§ 1-16).  While the provisions of the FAA are similar to Montana's Act, including a three-month time limitation to vacate an award, the FAA, unlike Montana law, does not recognize a motion to vacate an award for the reason that "there was no arbitration agreement."  *See* § 27-5-312, MCA, and 9 U.S.C. §§ 10-12.

¶11    Also, it is questionable whether a state district court has venue, under the FAA, to consider a motion to confirm, as § 9 of the FAA, dealing with confirming an award, states that if "no court is specified in the agreement of the parties, then such application

4

may be made **to the United States court** in and for the district within which such award was made." 9 U.S.C. § 9 (emphasis added). Federal case law is unclear as to whether § 9 is permissive or restrictive concerning venue *in state courts*. *See Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S 193, 195, 120 S. Ct. 1331, 1334 (2000) (holding that § 9 is permissive concerning venue in any *federal* district court). However, we need not determine whether venue is proper under the FAA because we conclude that the District Court correctly denied Dahlquist's motion to confirm on other grounds.

¶12    Under the FAA, where parties have not agreed to arbitrate, or where the arbitration does not follow the format provided for in the arbitration agreement, the arbitration award is invalid *ab initio*. *See MCI Telecommunications Corp. v. Exalon Industries, Inc.*, 138 F.3d 426, 430 (1st Cir. 1998). In *MCI*, it was unclear whether a written arbitration agreement was in effect at the time of the dispute. *MCI*, 138 F.3d at 427. Exalon therefore challenged the arbitration award, claiming it was invalid, while MCI responded that failure to challenge the award within three months barred any challenge to the validity of the award. *MCI*, 138 F.3d at 428. The First Circuit, interpreting the FAA, noted that submission of disputes to arbitration "is totally dependent upon the private will of the parties as embodied in [their contract]" and that arbitration under the FAA "is a matter of consent, not coercion." In other words, the FAA must be "triggered" by an agreement between the parties for its provisions to control, and this issue of arbitrability is "subject to independent review by the courts . . . ." *MCI*, 138 F.3d at 428-29 (citations omitted).

5

¶13    The First Circuit therefore concluded that Exalon was under no duty to affirmatively challenge the award if it did not agree to arbitration in the first place, because the "actions of the arbitrator [had] *no legal validity*."  *MCI*, 138 F.3d at 430 (emphasis added).  Specifically, the First Circuit determined that, for a party to be bound by the provisions of the FAA, and subject to the FAA's three-month time limitation, a written arbitration agreement must be "in effect" *and* the party must be "bound by [the] conditions" of the agreement.  *MCI*, 138 F.3d at 430.  One condition that must be followed for an arbitration proceeding to be valid under the FAA is employment of the agreed upon arbitrator.  *See* 9 U.S.C § 5 and *R. J. O'Brien & Assoc., Inc. v. Pipkin*, 64 F.3d 257, 263 (7th Cir. 1995) ("[I]n order to enforce an arbitration award, the arbitrator must be chosen in conformance with the procedure specified in the parties' agreement to arbitrate." (citation omitted)).

¶14    Here, the arbitration agreement specifically called for the use of JAMS, or a similar national arbitration association if JAMS was "unable or unwilling to serve as the provider of arbitration . . . ."  Dahlquist, however, did not use JAMS, but unilaterally selected NAC.  As BOA had not agreed to arbitrate the dispute before NAC, and as the agreement specifically called for JAMS to be used, NAC's award is unenforceable, under *R. J. O'Brien*, because NAC was not chosen in conformance with the arbitration agreement.  Further, the arbitration award was invalid *ab initio* under *MCI*, because, while there is a written arbitration agreement, BOA had not consented to be bound by NAC.  The FAA time limitation was thus not triggered, and BOA is not bound by the award, even though it failed to challenge it within three months.

¶15    Dahlquist, however, contends that even under the FAA, the three-month time limitation bars BOA from challenging the award. Dahlquist cites to *Sander v. Weyerhaeuser Co.*, 966 F.2d 501, 503 (9th Cir. 1992), for the proposition that the FAA's three-month limitation "is meaningless if a party to the arbitration proceedings may bring an independent direct action asserting such claims outside of the statutory time period." (Citations omitted.) However, this statement is inapplicable to the situation here, because the party in *Sander* had already consented to and participated in arbitration, and then, two years later, challenged the award, a valuation of stock, alleging a violation of securities laws. The Ninth Circuit refused to allow an arbitration participant to challenge the resulting award via "collateral attack." *Sander*, 966 F.2d at 502-03. Here, BOA, unlike the party in *Sander*, was not "a party to the arbitration proceeding" nor did it consent to arbitration with NAC.

¶16    Dahlquist also argues that *MCI* was distinguished by *International Technologies Integration, Inc. v. The Palestine Liberation Organization*, 66 F. Supp. 2d 3 (D. D.C. 1999), in a manner that applies here and renders *MCI* inapposite. However, to borrow a phrase from *ITI*, the case is not "the panacea" that Dahlquist hopes it is. In fact, for the very reasons that *ITI* is distinguishable from *MCI*, it does not apply to the facts here. First, the arbitration at issue in *ITI* took place in front of AAA, the arbitrator named in the agreement. *ITI*, 66 F. Supp. 2d at 15. Second, the arbitration agreement in *ITI* was subject to Virginia's arbitration law that, like Montana's statute, and unlike the FAA, "expressly addresses whether the ninety-day limitations period applies to challenges based on an absence of an agreement to arbitrate." *ITI*, 66 F. Supp. 2d at 15. So, while

7

the Federal District Court in *ITI* held that the PLO was barred, under Virginia law, from contesting the award because it missed the ninety-day window, its decision does not apply to this case, where the FAA controls and an unauthorized arbitrator was used.

**CONCLUSION**

¶17    Under the FAA, the arbitration award was invalid *ab initio* because NAC was not the arbitrator specified in the arbitration agreement, and BOA did not consent to arbitration under NAC.  The District Court's denial of Dahlquist's motion to confirm is therefore affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ BRIAN MORRIS