FILED

12/12/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0157

DA 17-0157

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 304

MATTHEW J. TEDESCO,

Plaintiff and Appellant,

v.

HOME SAVINGS BANCORP, INC., d/b/a
HOME SAVINGS OF AMERICA,
and DIRK S. ADAMS,

Defendants and Appellees.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DV 11-77
Honorable Jon A. Oldenburg, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Thomas A. Marra, Antonia P. Marra, Marra, Evenson & Bell, P.C., Great
Falls, Montana

For Appellees:

Craig R. Buehler, Buehler Law Office, Lewistown, Montana

Submitted on Briefs:  October 11, 2017

Decided:  December 12, 2017

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Matthew Tedesco began working in March 2008 for Home Savings of America (HSOA), a federally chartered savings and loan association. After a few months on the job, Tedesco signed an employment agreement containing a provision that required the parties to submit any disputes to binding arbitration. HSOA terminated Tedesco's employment in 2011. Tedesco sued HSOA, its CEO and Board Chair Dirk Adams, and Home Savings Bancorp (HSBC), which owned all of HSOA's stock. Tedesco alleged wrongful discharge, breach of contract, and fraud. The District Court ordered the parties to proceed to binding arbitration. The Arbitrator issued an award in favor of Adams and HSBC,[1] and the District Court confirmed the award. Tedesco appeals both the order compelling arbitration and the order confirming the award. We affirm both orders.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 Tedesco worked as a regional manager for First National Mortgage Sources until 2008. In that position, he oversaw lending branches and created a lending platform to secure mortgages for First National Bank. When First National Bank decided to shed First National Mortgage Sources, it granted Tedesco permission to move his branches and lending platform to another institution.

¶3 Tedesco contacted Adams, and the two negotiated an agreement under which HSOA—a Minnesota corporation—would employ Tedesco to move his branches and

---

[1] After Tedesco filed suit, HSOA was dissolved and placed into receivership with the Federal Deposit Insurance Corporation (FDIC). It was not a party to the arbitration and is not a party to this action on appeal. Tedesco maintains, however, that HSOA was the "alter ego" of Adams and HSBC.

2

lending platform to HSOA. Tedesco signed HSOA's Employee Handbook Acknowledgment and an Alternative Dispute Resolution Agreement on February 22, 2008. The Alternative Dispute Resolution Agreement stated that Tedesco agreed to arbitrate any disputes arising from his employment with HSOA. Tedesco began his work with HSOA in March 2008.

¶4 Shortly after Tedesco signed the Handbook Acknowledgment and the Alternative Dispute Resolution Agreement, Adams asked Tedesco to prepare an employment agreement. Tedesco prepared a proposed agreement with the assistance of counsel and presented it to Adams in April 2008. Adams rejected Tedesco's proposed agreement.

¶5 In July 2008, Adams presented Tedesco with a "Retail Regional Manager Terms of Employment" (Employment Agreement). The Employment Agreement contained this "Enforcement" provision: "Any and all disputes arising under or related to the Agreement shall be resolved by binding arbitration under the auspices of, and according to the rules promulgated by, the American Arbitration Association – Commercial Mediation Rules." The Employment Agreement also stated that Tedesco's employment was "terminable at the will of either party." Tedesco signed the Employment Agreement on July 30, 2008. Tedesco later testified that he would have faced immediate termination had he not signed the agreement. He claimed also that, by July 2008, he already had moved his branches and lending platform to HSOA and relocated his family.

¶6 HSOA terminated Tedesco's employment on June 1, 2011. Tedesco filed a complaint in August 2011 against Adams and "Home Savings Bancorp, Inc., d/b/a Home Savings of America." He asserted wrongful discharge under the Montana Wrongful

3

Discharge from Employment Act (WDEA), breach of contract, fraud, constructive fraud, and fraud in the inducement.

¶7 When Tedesco refused to submit to arbitration, HSBC and Adams filed a motion to compel arbitration and to stay the action, or to dismiss the complaint under M. R. Civ. P. 12. The District Court issued an order in February 2015 compelling arbitration through the American Arbitration Association (AAA) and staying the proceedings pending the outcome of the arbitration. The court found that, although the February 2008 Handbook Acknowledgment and Alternative Dispute Resolution Agreement did not constitute valid contracts, the July 2008 Employment Agreement's arbitration provision was binding on the parties.

¶8 At arbitration, the parties submitted evidence and participated in an evidentiary hearing, at which Tedesco and Adams testified. In August 2016, the Arbitrator granted summary judgment to Adams and HSBC on Tedesco's wrongful discharge, breach of contract, and fraud claims.

¶9 Tedesco filed an application with the District Court in October 2016 to vacate, correct, or modify the Arbitrator's award. The court denied Tedesco's application. It reasoned that its role was not to "review the merits of the controversy," and it referenced the Arbitrator's "broad authority and powers to determine all issues." The District Court then entered judgment confirming the Arbitrator's award. Tedesco appeals.

4

**STANDARDS OF REVIEW**

¶10 This Court reviews de novo a district court's order on a motion to compel arbitration. *Global Client Solutions, LLC v. Ossello*, 2016 MT 50, ¶ 19, 382 Mont. 345, 367 P.3d 361.

¶11 A district court's review of an arbitration award is strictly limited by Montana's Uniform Arbitration Act (UAA). *Paulson v. Flathead Conservation Dist.*, 2004 MT 136, ¶ 24, 321 Mont. 364, 91 P.3d 569; *Geissler v. Sanem*, 285 Mont. 411, 415, 949 P.2d 234, 237 (1997). We review district court decisions on arbitration awards like any other district court decision, accepting findings of fact that are not clearly erroneous but deciding questions of law de novo. *City of Livingston v. Mont. Pub. Emps. Ass'n ex rel. Tubaugh*, 2014 MT 314, ¶ 11, 377 Mont. 184, 339 P.3d 41. We review a district court's ultimate decision to confirm an arbitration award for an abuse of discretion. *Colstrip Energy Ltd. P'ship v. Nw. Corp.*, 2011 MT 99, ¶ 18, 360 Mont. 298, 253 P.3d 870.

¶12 The test for an abuse of discretion is whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice. *Colstrip Energy Ltd. P'ship*, ¶ 18. In reviewing whether the District Court abused its discretion in confirming the arbitration award, we apply the law that a court cannot review the merits of the controversy, but may only confirm, vacate, modify, or correct an arbitration award pursuant to §§ 27-5-311, -312, and -313, MCA. *Roberts v. Lame Deer Pub. Sch. Dist. #6*, 2013 MT 358, ¶ 7, 373 Mont. 49, 314 P.3d 647.

**DISCUSSION**

¶13 "The Federal Arbitration Act (FAA) governs contracts that involve interstate commerce." *Kelker v. Geneva-Roth Ventures, Inc.*, 2013 MT 62, ¶ 11, 369 Mont. 254, 303 P.3d 777. The FAA preempts state laws that "prohibit outright the arbitration of a particular type of claim." *Kelker*, ¶ 15 (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341, 131 S. Ct. 1740, 1747 (2011)). "However, when a state law does not conflict with the FAA so as to frustrate the objectives of Congress, it is not necessarily preempted." *Keystone, Inc. v. Triad Sys. Corp.*, 1998 MT 326, ¶ 23, 292 Mont. 229, 971 P.2d 1240. The FAA preempts a state law "to the extent that it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the FAA. *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 432 (9th Cir. 2015). The Employment Agreement between Tedesco and HSOA involved interstate commerce: HSOA was a Minnesota corporation, Tedesco was a Montana resident, and Tedesco's work with HSOA involved doing business across state lines. The FAA therefore applies to the Employment Agreement's arbitration clause. *See Kelker*, ¶ 11. Montana's UAA also applies to the extent that it does not conflict with the FAA's objectives. *See Sakkab*, 803 F.3d at 432.

¶14 *1. Whether the District Court erred in compelling arbitration.*

¶15 Tedesco argues that the District Court erred in ordering the parties to proceed to arbitration. He contends that the Employment Agreement generally and the arbitration clause specifically were invalid. In his view, because there was no valid agreement between the parties to arbitrate their disputes, the District Court should have denied

6

Adams's and HSBC's motion to compel arbitration. Adams and HSBC challenge Tedesco's appeal of the District Court's order compelling arbitration as untimely.

**A. Timeliness of Tedesco's Appeal of the Order Compelling Arbitration.**

¶16    The District Court issued its order compelling arbitration on February 26, 2015, and it simultaneously stayed the proceedings. Adams and HSBC argue that the order was "final and appealable" and therefore that Tedesco had thirty days to appeal it. Because Tedesco did not appeal the order compelling arbitration until March 2017—over two years later— Adams and HSBC urge the Court not to hear his appeal.

¶17    The Montana Rules of Appellate Procedure provide that notice of appeal in civil cases "shall be filed with the clerk of the supreme court within 30 days from the date of entry of the judgment or order from which the appeal is taken." M. R. App. P. 4(5)(a)(i). The Rules allow a party to appeal from a "final judgment in an action" or from specified "final orders" in civil cases. M. R. App. P. 6(1), (3). The list of orders from which appeal may be taken does not include orders compelling arbitration. *See* M. R. App. P. 6(3).

¶18    Montana's UAA also specifies certain rulings from which a party may appeal, including: "an order denying an application to compel arbitration"; "an order granting an application to stay arbitration"; "an order confirming or denying confirmation of an award"; "an order modifying or correcting an award"; "an order vacating an award without directing a rehearing"; or "a judgment entered pursuant to the provisions of" the UAA. Section 27-5-324(1), MCA. The list does not include orders compelling arbitration. *See* § 27-5-324(1), MCA. The FAA states that "an appeal may *not* be taken from an interlocutory order . . . compelling arbitration." 9 U.S.C. § 16(b)(3) (emphasis added).

7

¶19 Adams and HSBC cite our decisions in *Iwen v. U. S. W. Direct*, 1999 MT 63, 293 Mont. 512, 977 P.2d 989, and *Larsen v. Opie*, 237 Mont. 108, 771 P.2d 977 (1989), for the proposition that interlocutory orders compelling arbitration are immediately appealable under the FAA. In *Iwen*, the district court granted U.S. West Direct's motion to compel arbitration and to stay the proceedings. In holding that this Court had jurisdiction to hear the appeal, we explained, "We have recently addressed the issue of the appealability of orders to arbitrate within the context of the Federal Arbitration Act and concluded that an order compelling arbitration is final and appealable." *Iwen*, ¶ 18 (citing *Larsen*, 237 Mont. at 110, 771 P.2d at 979).

¶20 In *Larsen*, the district court granted Opie's motion to compel arbitration. *Larsen*, 237 Mont. at 109, 771 P.2d at 978. We held that the court's order compelling arbitration was "final" and "appealable," reasoning that it constituted "a final determination of the District Court." *Larsen*, 237 Mont. at 110, 771 P.2d at 979.

¶21 This Court decided *Larsen* in 1989 and *Iwen* in 1999. The Ninth Circuit Court of Appeals held recently that the FAA "bars appeals of interlocutory orders compelling arbitration and staying judicial proceedings." *Johnson v. Consumerinfo.com, Inc.*, 745 F.3d 1019, 1021 (9th Cir. 2014) (citing 9 U.S.C. § 16(b)); *accord MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 7 (9th Cir. 2014) (holding that "an order compelling arbitration may be appealed if the district court dismisses all the underlying claims, but may not be appealed if the court stays the action pending arbitration"). This authority makes clear that an interlocutory order compelling arbitration, when combined with a stay

8

of the proceedings pending arbitration, is not final and appealable under the FAA. 9 U.S.C. § 16(b)(3); *Johnson*, 745 F.3d at 1021; *MediVas, LLC*, 741 F.3d at 7.

¶22 We consistently decline to entertain appeals of orders that are not final orders in the case or that do not meet one of the specific exceptions listed in Rule 6(3). *See Johnson v. Booth*, 2008 MT 155, ¶¶ 30-31, 343 Mont. 268, 184 P.3d 289 (holding that the district court's order on discovery sanctions was not a "final judgment" and therefore was not reviewable on appeal). And the UAA does not provide for the appeal of interlocutory orders compelling arbitration, although it does authorize appeal from an order denying a motion to compel. Section 27-5-324(1), MCA. Neither the applicable statutes nor the Rules of Appellate Procedure authorize immediate appeal from an order compelling arbitration where the case is not dismissed by that order. To the extent that our decisions in *Iwen* and *Larsen* state the contrary, we modify those decisions and hold that interlocutory orders compelling arbitration and staying further proceedings are not immediately appealable. *See Iwen*, ¶ 18; *Larsen*, 237 Mont. at 110, 771 P.2d at 979.

¶23 We conclude that the District Court's interlocutory order compelling arbitration and staying further proceedings was not final and appealable. The thirty-day time bar of M. R. App. P. 4(5)(a)(i) therefore did not apply to that order. Tedesco's appeal of the order is timely.

**B. Whether the Parties Had a Valid Agreement to Arbitrate.**

¶24 Tedesco asserts a number of errors in the District Court's decision to compel arbitration. He contends that the Employment Agreement was invalid because it was a contract of adhesion presented to him on a "take it or leave it" basis and because its "at

9

will" termination provision violated public policy and the WDEA. He claims also that the arbitration clause was unconscionable and unenforceable because he did not receive a copy of the arbitration rules that the clause referenced and because there was no "meeting of the minds" on the clause's essential terms. Finally, he argues that the arbitration clause did not cover his breach of contract and fraud claims and that the District Court should have allowed those claims to proceed in court.

¶25 Tedesco attacks the validity of the Employment Agreement as a whole and of the arbitration clause specifically. "[U]nder the FAA, when a party challenges the validity of a contract as a whole, an arbitrator should resolve that dispute in the first instance." *Kelker*, ¶ 12 (citing *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 20, 133 S. Ct. 500, 503 (2012)); *accord Martz v. Beneficial Mont., Inc.*, 2006 MT 94, ¶ 17, 332 Mont. 93, 135 P.3d 790 ("[A]rbitration, not court, is the proper forum for challenges to contracts as a whole where those contracts contain arbitration provisions."). The District Court did not err in allowing the Arbitrator to decide the validity of the Employment Agreement.

¶26 "When a party challenges the validity of the arbitration clause in a contract, however, a court may resolve that dispute in the first instance." *Kelker*, ¶ 12. The FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Montana's UAA similarly provides, "A written agreement to submit to arbitration any controversy arising between the parties after the agreement is made is valid

10

and enforceable except upon grounds that exist at law or in equity for the revocation of a contract." Section 27-5-114(2), MCA.

¶27 Both federal and Montana law apply a "presumption of arbitrability" to arbitration agreements, under which doubts are "resolved in favor of arbitration." *Ossello*, ¶ 21; *Kalispell Educ. Ass'n v. Bd. of Trs.*, 2011 MT 154, ¶ 18, 361 Mont. 115, 255 P.3d 199 (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301, 130 S. Ct. 2847, 2858 (2010)). "The initial inquiry when any court is asked to compel arbitration is whether the parties have agreed to arbitrate." *Ossello*, ¶ 23; *accord Kortum-Managhan v. Herbergers NBGL*, 2009 MT 79, ¶ 15, 349 Mont. 475, 204 P.3d 693. "[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Kalispell Educ. Ass'n*, ¶ 20 (citation and internal quotations omitted).

¶28 "An enforceable agreement to arbitrate must [ ] have the same elements as any contract: namely, identifiable parties with the capacity to contract; the consent of the parties; a lawful object; and consideration. The consent of the parties requires that there be mutual assent or a meeting of the minds on all essential terms to form a binding contract." *Ossello*, ¶ 23 (internal citation and quotations omitted).

¶29 Tedesco contends that there was no "meeting of the minds" as to the essential terms of the arbitration clause because the District Court altered the title of the applicable arbitration rules from the AAA's "Commercial Mediation Rules" to the AAA's "Commercial Arbitration Rules." As the District Court noted, however, the AAA's manual to which the arbitration clause refers is entitled, "Commercial Arbitration Rules and

11

Mediation Procedures" and contains the AAA's rules for both arbitration and mediation. The District Court's revision of what it noted was a "simple misstatement of the official title of the manual in the Employment Agreement" did not alter any of the "essential terms" of the arbitration clause. *See Ossello*, ¶ 23. It did not change the fact that there was a "meeting of the minds" on the parties' agreement to resolve their disputes by binding arbitration under the auspices of the AAA. *See Ossello*, ¶ 23. The arbitration clause thus satisfies the element of having the "consent of the parties." *See Ossello*, ¶ 23. Tedesco does not allege that the clause failed to meet the other elements of an enforceable agreement: identifiable parties, a lawful object, or consideration. *See Ossello*, ¶ 23.

¶30 Tedesco argues that the arbitration clause was unconscionable and unenforceable in part because the Employment Agreement—including the arbitration clause—was presented to him on a "take it or leave it" basis and he had no meaningful opportunity to decline or negotiate the terms. He argues that the clause was unconscionable also because he did not receive a copy of the arbitration rules to which the clause referred.

¶31 The test for whether a contract provision—such as an arbitration clause—is unconscionable "involves a two-step inquiry: whether the contract qualifies as a contract of adhesion, and whether the contract unreasonably favored the drafter." *Kelker*, ¶ 19. "Contracts of adhesion arise when a party possessing superior bargaining power presents a standardized form of agreement to a party whose choice remains either to accept or reject the contract without the opportunity to negotiate its terms." *Kortum-Managhan*, ¶ 23 (citation and internal quotations omitted). "Disparity in bargaining power is an essential

12

element of a contract of adhesion." *Day v. CTA, Inc.*, 2014 MT 119, ¶ 10, 375 Mont. 79, 324 P.3d 1205.

¶32 Even if an arbitration clause is part of a contract of adhesion, however, "that alone does not make the arbitration clause unenforceable." *Graziano v. Stock Farm Homeowners Ass'n*, 2011 MT 194, ¶ 20, 361 Mont. 332, 258 P.3d 999. The party challenging the clause must show that the clause was unreasonably favorable to the drafter, meaning that it "either (1) was not within [the non-drafting party's] reasonable expectations, or (2) was within his reasonable expectations, but when considered in context, is unduly oppressive, unconscionable, or against public policy." *Graziano*, ¶ 20; *see Kelker*, ¶ 19.

¶33 "[I]n determining whether a contractual provision proves unconscionable for being outside a party's reasonable expectations," courts consider the following factors, among others: "whether a disparity existed in the bargaining power of the contracting parties"; "whether a difference in business experience and sophistication of the parties existed"; whether the party agreeing to the provision "was represented by counsel at the time the agreement was executed"; "whether economic, social or practical duress compelled a party to execute the contract"; and whether the clause was "ambiguous or misleading." *Kelker*, ¶ 21 (citing *Kortum-Managhan*, ¶ 27).

¶34 In *Iwen*, we held that an arbitration clause that permitted the drafter to sue over any disputes arising out of an advertising contract but that required the non-drafting party to arbitrate all disputes was unconscionable. *Iwen*, ¶ 34. We noted that the drafter "pointedly protected itself by preserving its constitutional right of access to the judicial system while at the same time completely removed that right" from the other party. *Iwen*, ¶ 31. We

13

concluded, "[D]isparities in the rights of the contracting parties must not be so one-sided and unreasonably favorable to the drafter, as they are in this case, that the agreement becomes unconscionable and oppressive." *Iwen*, ¶ 32.

¶35 We followed *Iwen* in *Ossello* and held that the arbitration clause at issue was unconscionable because it unfairly favored the drafter—Global Client Solutions—and lacked mutuality. We pointed out that, under the terms of the arbitration agreement, "Ossello is obligated to arbitrate all controversies arising from the breach of the [agreement], but if Ossello breaches the agreement, Global has the right to sue her in a court of law and to recover damages plus court costs, collection fees, and attorney fees." *Ossello*, ¶ 37. We therefore concluded that "the obligation to arbitrate is one-sided" and "not mutual." *Ossello*, ¶ 37.

¶36 We cannot conclude here that the Employment Agreement's arbitration clause was "so one-sided and unreasonably favorable to the drafter" as to be "unconscionable" and unenforceable. *Iwen*, ¶ 32. Unlike in *Iwen* and *Ossello*, the Employment Agreement bound both Tedesco and HSOA equally to arbitrate any disputes that arose from Tedesco's employment. The terms of the clause were not skewed in HSOA's favor.

¶37 Tedesco contends that he had less bargaining power than HSOA and that he had no meaningful choice but to accept the terms of the Employment Agreement as proposed by Adams. The record shows, however, that Tedesco had the opportunity to draft an employment agreement in March 2008, well before he signed HSOA's Employment Agreement. Indeed, he retained counsel to help him draft an agreement. Although Tedesco testified that he faced immediate termination if he did not sign the Employment Agreement

14

as it was written, he did not present other evidence to support his assertion. Further, Tedesco signed a copy of HSOA's Alternative Dispute Resolution Agreement on February 22, 2008, which put him on notice—before his employment with HSOA began—that HSOA had a policy of arbitrating disputes. The record does not prove Tedesco's contention that he had no opportunity to negotiate the terms of the Employment Agreement.

¶38 As the District Court observed, Tedesco was an experienced businessman with valuable products to offer HSOA—access to his branches and lending platform. Unlike a typical consumer transaction, it is not clear that HSOA had "superior bargaining power" over Tedesco, given Tedesco's business expertise and sophistication, his employment of counsel, and his opportunity to propose an employment agreement. *Kortum-Managhan*, ¶ 23. Because there is no clear error in the District Court's finding that the parties had relatively equal bargaining power, the court properly concluded that the Employment Agreement was not a "contract of adhesion." *See Kortum-Managhan*, ¶ 23.

¶39 Tedesco's awareness of HSOA's arbitration policy, his opportunity to prepare an employment agreement with the assistance of counsel, and the fact that the Employment Agreement obligated both parties equally to arbitrate supports a conclusion that the Employment Agreement was "within [Tedesco's] reasonable expectations" and that it was not "unduly oppressive, unconscionable, or against public policy." *Graziano*, ¶ 20. Because the Employment Agreement was not a "contract of adhesion" and did not unreasonably favor HSOA, Tedesco has not shown that the arbitration clause was unconscionable and unenforceable. *See Kelker*, ¶ 19.

15

¶40 Further, we are unpersuaded—in light of the above-referenced circumstances surrounding the Employment Agreement—that HSOA's failure to provide Tedesco with a copy of the applicable arbitration rules renders the entire clause unconscionable. Tedesco cites two federal district court cases from California to support his argument: *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243 (C.D. Cal. 2016), and *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000 (N.D. Cal. 2015). These cases highlight California's differentiation between procedural and substantive unconscionability, a distinction that Montana does not recognize and Tedesco has not explained. Tedesco cites no Montana authority to support his contention that HSOA's failure to supply the rules, without more, requires a determination that the arbitration clause was unenforceable. The record supports the District Court's ruling that the parties entered into a valid agreement to arbitrate.

¶41 Finally, Tedesco argues that the District Court erred in referring his breach of contract and fraud claims to the Arbitrator. He asserts that these claims fall outside the purview of the arbitration clause. The arbitration clause states, "Any and all disputes *arising under or related to the* [*Employment*] *Agreement* shall be resolved by binding arbitration." (Emphasis added). Tedesco's breach of contract claim is based upon Adams's and HSBC's alleged breach of the terms of the Employment Agreement and their unlawful termination of his employment. His fraud, constructive fraud, and fraud in the inducement claims rely on Adams's and HSBC's alleged misrepresentations in convincing Tedesco to move his branches and lending platform to HSOA, for which the Employment Agreement provided Tedesco would be compensated. These claims "aris[e] under or [are] related to" Tedesco's Employment Agreement with HSOA. Applying the "presumption of

16

arbitrability," we conclude that these claims fall under the purview of the arbitration clause and that the District Court properly referred them to arbitration. *See Kalispell Educ. Ass'n*, ¶ 18; *Ossello*, ¶ 21.

¶42    2. *Whether the District Court abused its discretion in confirming the arbitration award*.

¶43    The UAA limits judicial review of an arbitration award. *Paulson*, ¶ 24; *Geissler*, 285 Mont. at 415, 949 P.2d at 237. Pertinent to Tedesco's claims, § 27-5-312(1)(b), MCA, provides: "Upon the application of a party, the district court shall vacate an award if . . . there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party." The UAA "does not authorize judicial review of arbitration awards on the merits of the controversy." *Paulson*, ¶ 24 (citation and internal quotations omitted). District courts review arbitration awards "for a manifest disregard of the law pursuant to § 27-5-312(1)(b), MCA." *Geissler*, 285 Mont. at 416, 949 P.2d at 238. "To conclude that an arbitrator ruled in manifest disregard of the law requires more than simply a misapplication of the law by the arbitrator." *Geissler*, 285 Mont. at 417, 949 P.2d at 238. "For reversal under this standard, an arbitrator must have been aware of a clearly governing principle of Montana law, but blatantly refused to follow it." *Paulson*, ¶ 24 (citation and internal quotations omitted).

¶44    Tedesco argues that the Arbitrator manifestly disregarded the law by: determining that arbitration was not precluded by the WDEA; unilaterally altering the applicable arbitration rules to the AAA's "Employment Arbitration Rules"; permitting Adams and HSBC to commit discovery violations; and granting summary judgment to Adams and

17

HSBC. Tedesco asserts that, because the arbitrator clearly disregarded the law, the District Court abused its discretion in confirming the arbitration award.

¶45 Adams and HSBC respond in part that, because the arbitration clause was governed by the FAA, Tedesco was required to file his motion to vacate the arbitration award in federal district court rather than in state court. They assert that the District Court therefore lacked jurisdiction to hear Tedesco's motion.

### A. State Court Jurisdiction.

¶46 The FAA provides that, under certain circumstances, "the United States court in and for the district wherein the award was made *may* make an order vacating the award upon the application of any party to the arbitration." 9 U.S.C. § 10(a) (emphasis added). The statute provides also that a party seeking confirmation of an arbitration award "may" make an application for confirmation to the federal district court. 9 U.S.C. § 9. The FAA does not state explicitly that federal district courts shall have exclusive jurisdiction over applications to vacate, confirm, or alter arbitration awards. *See generally*, 9 U.S.C. §§ 1-16.

¶47 Adams and HSBC rely in part on our decision in *Bank of America, N.A. v. Dahlquist*, 2007 MT 32, 336 Mont. 50, 152 P.3d 718. We stated, "[I]t is questionable whether a state district court has venue, under the FAA, to consider a motion to confirm," given that "[f]ederal case law is unclear as to whether § 9 [of the FAA] is permissive or restrictive concerning venue *in state courts*." *Dahlquist*, ¶ 11 (emphasis in original). We did not decide whether the district court could entertain the claim under the FAA, because we held that "the District Court correctly denied Dahlquist's motion to confirm on other grounds."

18

*Dahlquist*, ¶ 11. Because we did not reach the jurisdictional issue, *Dahlquist* does not provide guidance here. Adams and HSBC also cite briefly to *Dahlquist*'s companion case, *Citibank (S.D.) N.A. v. Dahlquist*, 2007 MT 42, 336 Mont. 100, 152 P.3d 693. That case does not discuss the jurisdiction of Montana state courts to hear motions arising under the FAA.

¶48     In the absence of clear language in the FAA or any other legal authority depriving state courts of jurisdiction over applications to vacate arbitration awards under the FAA, we conclude that the FAA did not bar Tedesco from filing his application in state court. *See Harrington v. Energy W. Inc.*, 2015 MT 233, ¶ 24, 380 Mont. 298, 356 P.3d 441 ("Article VII, section 4 of the Montana Constitution provides district courts with subject-matter jurisdiction in all civil matters, without limitation.").

**B. Whether the Arbitrator Manifestly Disregarded the Law.**

¶49     In granting summary judgment to Adams and HSBC, the Arbitrator first rejected Tedesco's claims of wrongful discharge under the WDEA and of breach of contract. The Arbitrator reasoned that the WDEA did not apply because Tedesco had failed to establish that either Adams or HSBC—rather than HSOA—was Tedesco's "employer" for purposes of the law. The Arbitrator reasoned that, "[i]n the absence of some statutory indication that the Montana legislature intended liability under the WDEA to extend beyond the traditional definition of employer, [Tedesco] fail[ed] to sustain a claim for violations of the WDEA" against Adams or HSBC. The Arbitrator cited our holding in *Buck v. Billings Mont. Chevrolet*, 248 Mont. 276, 287, 811 P.2d 537, 543 (1991), for the proposition that "[a]ll

19

remedies provided by the Act run against the employer. The Act does not envision lawsuits against corporate employees, officers or shareholders."

¶50 As to the breach of contract claim, the Arbitrator concluded that neither Adams nor HSBC was a party to the Employment Agreement and therefore that Tedesco's claims against them failed. The Arbitrator noted that "contract actions [ ] require privity for enforcement and claims of breach." (Citing *Degnan v. Exec. Homes*, 215 Mont. 162, 168, 696 P.2d 431, 435 (1985); *State ex rel. Buttrey Foods v. Dist. Court of the Third Jud. Dist.*, 148 Mont. 350, 353, 420 P.2d 845, 847 (1996)).

¶51 The Arbitrator found that the Employment Agreement was between Tedesco and HSOA and that Tedesco had not demonstrated privity with Adams and HSBC. As to Tedesco's attempt to "pierce the corporate veil" and hold Adams and HSBC legally accountable for HSOA's actions, the Arbitrator noted that, under state and federal case law, Tedesco had the burden to show that HSOA was the "alter ego" of Adams or HSBC and that Adams or HSBC used HSOA as a "subterfuge" to commit bad acts. The Arbitrator concluded that Tedesco had presented "scant" evidence that Adams or HSBC had used HSOA as a "subterfuge."

¶52 Bearing in mind the limited scope of a court's review in arbitration cases, *see Geissler*, 285 Mont. at 415, 949 P.2d at 237, we conclude that Tedesco has not shown manifest disregard of the law. We do not review the Arbitrator's resolution of disputed facts, including the nature of Tedesco's relationships to Adams and HSBC, the identity of Tedesco's employer, or whether Tedesco met his evidentiary burden on his claims. The Arbitrator clearly was aware of the relevant governing principles of Montana law: namely,

20

that the WDEA provides a remedy against an "employer," *see, e.g.*, § 39-2-905, MCA, and that breach of contract actions require privity between the parties, *see State ex rel. Buttrey Foods*, 148 Mont. at 353, 420 P.2d at 847. Whether the Arbitrator correctly applied the law is not the issue. *Geissler*, 285 Mont. at 417, 949 P.2d at 238. Tedesco has not established that the Arbitrator "blatantly refused to follow" the governing principles of law. *Paulson*, ¶ 24.

¶53 The Arbitrator also rejected Tedesco's fraud claims, concluding that they were barred by the statute of limitations. Tedesco had asserted that Adams made false statements during the employment negotiations about HSOA's capacity to handle Tedesco's lending platform and branches and about HSOA's financial soundness. The Arbitrator recognized that Montana law grants a party two years to file a claim of fraud, commencing from "the discovery by the aggrieved party of the facts constituting the fraud." Section 27-2-203, MCA. The Arbitrator determined that Tedesco discovered HSOA's fraudulent actions in 2008, more than two years before he filed suit in August 2011. Again, the factual findings underpinning this conclusion are beyond the scope of our review. The Arbitrator did not manifestly disregard the law pertaining to Tedesco's fraud claims.

¶54 Tedesco argues further that the Arbitrator disregarded the law by unilaterally determining that the AAA's "Employment Arbitration Rules" would apply to the proceedings, rather than the "Commercial Mediation Rules," as stated in the arbitration clause, or the "Commercial Arbitration Rules," as the District Court had determined. Indeed, the Arbitrator stated in a September 2015 scheduling order, "This Arbitration shall be governed by the AAA Employment Arbitration Rules." The Arbitrator reasoned in a

subsequent order, "In designating the AAA [ ], the Parties submitted to the AAA's administrative determination that, regardless of the choice referenced, the dispute arose in the employment context and the Employment Arbitration Rules apply."

¶55 The Arbitrator relied on the AAA's Employment Arbitration Rules for the proposition that "when an arbitration is filed arising in the employment context, the AAA makes an initial administration determination as to whether the dispute arises from an employer plan or an individually-negotiated employment agreement or contract." The Arbitrator determined that the dispute before it arose from an "individually-negotiated employment agreement." Under the Employment Arbitration Rules, that determination required the parties—including Tedesco—to pay equal portions of the arbitration.

¶56 "Once it is determined . . . that the parties are obligated to submit the subject matter of the dispute to arbitration, procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *Mont. Pub. Emps. Ass'n v. City of Bozeman*, 2015 MT 69, ¶ 8, 378 Mont. 337, 343 P.3d 1233 (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S. Ct. 909, 918 (1964)). We held in *Montana Public Employees' Association*, for instance, that "an arbitration agreement's time limits and conditions precedent to arbitration are *procedures* that bear on arbitrability. Whether a dispute remains arbitrable despite the failure to follow these procedures is a classic question of procedural arbitrability that is for an arbitrator and not for a court to decide." *Mont. Pub. Emps. Ass'n*, ¶ 10 (emphasis in original).

¶57 As we have discussed, the parties agreed to submit their dispute to arbitration through the AAA. The Arbitrator determined which set of rules was most applicable to the

22

case at hand and then found that the Employment Agreement was "individually-negotiated" rather than part of an "employer plan." These "procedural questions" were within the Arbitrator's authority and are outside the scope of our review. *Mont. Pub. Emps. Ass'n*, ¶ 8. The Arbitrator's determination of which of the AAA rules would apply did not present a question for the court concerning "manifest disregard of the law." *Geissler*, 285 Mont. at 416, 949 P.2d at 238. The Arbitrator's subsequent factual determination that the Employment Agreement was "individually-negotiated" goes to the "merits of the controversy" and was beyond the scope of judicial review. *Paulson*, ¶ 24.

¶58 Finally, Tedesco argues that the Arbitrator disregarded the law by permitting Adams and HSBC to commit discovery violations during arbitration. Adams and HSBC responded to Tedesco's interrogatories and requests for production in February 2016, in compliance with the Arbitrator's order to do so. As Tedesco points out, however, the responses to most of the inquiries consisted of either objections to the questions or statements that neither Adams nor HSBC possessed the information requested. Adams also submitted to a deposition in February 2016. The transcript of that deposition shows that Adams provided answers to many of the questions, but also that he declined to answer many others. Tedesco contends that Adams's and HSBC's actions amounted to discovery violations.

¶59 These contentions, too, raise "procedural questions" that arose during arbitration and fell under the purview of the Arbitrator. *See Mont. Pub. Emps. Ass'n*, ¶ 8. Further, "Montana gives arbitrators broad authority and powers to determine all issues." *City of Livingston*, ¶ 14. Management of the discovery process during arbitration is left to the determination of the Arbitrator. The record does not show that Adams and HSBC so clearly

23

abused the discovery process that the Arbitrator's failure to take punitive action against them constituted a "manifest disregard of the law." *Geissler*, 285 Mont. at 416, 949 P.2d at 238.

¶60 Tedesco similarly argues that the District Court committed reversible error by failing to enforce discovery rules against Adams and HSBC.[2] He alleges that Adams and HSBC repeatedly refused to respond to his interrogatories and requests for production, in violation of the District Court's discovery orders. Tedesco maintains that when Adams and HSBC eventually responded to Tedesco's discovery requests, they objected to most of Tedesco's inquiries and refused to provide substantive documents, thereby rendering their discovery responses meaningless and not in good faith.

¶61 "Generally, it is up to the trial court to decide the proper sanction for discovery abuse. We defer to the trial court because it is in the best position to know whether the party in question has disregarded the other's rights, and is in the best position to determine which sanction is most appropriate." *Harrell v. Farmers Educ. Coop. Union*, 2013 MT 367, ¶ 61, 373 Mont. 92, 314 P.3d 920. The Montana Rules of Civil Procedure provide that a district court "may" order sanctions for a party's failure to respond to interrogatories or requests for inspection, M. R. Civ. P. 37(d)(1)(A)(ii), or for a party's failure to obey a discovery order, M. R. Civ. P. 37(b)(2)(A). "We review a District Court's rulings on

---

[2] Tedesco argues that the District Court's actions during discovery bear on the validity of the court's order compelling arbitration. But his discovery assertions go to the merits of the dispute and not to the validity of the arbitration clause. As such, we address them here, rather than in our discussion of the court's order compelling arbitration.

discovery matters for an abuse of discretion." *Draggin' Y Cattle Co. v. Addink*, 2013 MT 319, ¶ 17, 372 Mont. 334, 312 P.3d 451.

¶62 The District Court acknowledged on multiple occasions during the proceedings that Adams and HSBC were inadequately participating in the discovery process. In a January 2012 order denying Adams's and HSBC's motion to stay discovery, the court noted the defendants' "extensive delay in responding to discovery." Then, in an August 2014 order denying Tedesco's motion for default judgment due to Adams's and HSBC's alleged discovery violations, the court acknowledged that Adams and HSBC had not "followed the procedures and deadlines as set out in Rule 37 [of the Montana Rules of Civil Procedure]." The court explained in that order, however, that Tedesco had not "alleged or shown the requisite prejudice, other than delay of his day in Court, that would dictate this Court to use its discretionary powers to enter a default judgment."

¶63 Adams and HSBC argued—and they maintain on appeal—that their failure to comply fully with Tedesco's discovery requests was justified because those requests should have been directed at HSOA, which was in receivership with the FDIC. Adams and HSBC contend that the FDIC possessed the documents relating to Tedesco's employment with HSOA that Tedesco requested. Adams and HSBC moved for a protective order against Tedesco's discovery requests, which the court denied in July 2014. Shortly after the court denied the protective order, Adams and HSBC responded to Tedesco's interrogatories and requests for production. Tedesco maintains that the responses were inadequate.

¶64 The record provides support for Tedesco's contention that Adams and HSBC did not fully comply with discovery rules. Yet the record also shows instances of Adams's

25

and HSBC's compliance and suggests that their failures to fully comply with the discovery process were based on their belief that they did not possess the information that Tedesco requested. The District Court was in the "best position" to determine whether Adams and HSBC had disregarded Tedesco's rights and "to decide the proper sanction" for any discovery abuses. *Harrell*, ¶ 61. Tedesco alleged discovery violations under M. R. Civ. P. 37(b)(2)(A)—for Adams's and HSBC's failure to obey the District Court's discovery orders—and M. R. Civ. P. 37(d)(1)(A)(ii)—for their failure to answer interrogatories or respond to requests for production. Under each of these rules, the District Court "may" order sanctions; the rules do not require the District Court to do so. It was within the court's discretion to decide whether and how to sanction Adams and HSBC. *See Harrell*, ¶ 61. We determine that the court did not abuse that discretion. *See Draggin' Y Cattle Co.*, ¶ 17.

¶65     In addressing Tedesco's claims against Adams and HSBC, in determining which of the AAA's rules applied to the case at hand, and in managing the discovery process, the Arbitrator did not manifestly disregard the law. The District Court did not abuse its discretion in confirming the arbitration award.

## CONCLUSION

¶66     The District Court's order compelling arbitration and its judgment confirming the arbitration award are affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

26