DA 21-0140

FILED

03/15/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0140

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2022 MT 50

SUTEY OIL COMPANY, INC.,

      Plaintiff, Appellee,
      and Cross-Appellant,

    v.

MONROE'S HIGH COUNTRY TRAVEL
PLAZA, LLC, a Montana Limited Liability
Company, and MARVIN MONROE,

      Defendants and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
                 In and For the County of Lewis and Clark, Cause No. DDV-2015-126
                 Honorable Ed McLean and Honorable Christopher D. Abbott,
                 Presiding Judges

COUNSEL OF RECORD:

        For Appellants:

                Dale Schowengerdt, Crowley Fleck PLLP, Helena, Montana

                Gregory W. Duncan, Attorney at Law, Helena, Montana

        For Appellee:

                Gregory A. McDonnell, Orr McDonnell Law, PLLC, Missoula, Montana

                David Bjornson, Bjornson Jones Mungas, PLLC, Missoula, Montana

                          Submitted on Briefs:  February 16, 2022
                                 Decided:  March 15, 2022

Filed:

_____
                      Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Monroe's High Country Travel Plaza and Marvin Monroe (collectively Monroe) appeal the First Judicial District Court's order denying their motion to vacate or modify an arbitration award to correct an "evident miscalculation of figures." Section 27-5-313(1)(a), MCA.  Sutey Oil Company (Sutey) cross-appeals the court's refusal of its claim for attorney fees and costs because of Monroe's alleged unreasonable and vexatious actions multiplying the proceedings.  Concluding that the District Court applied an overly narrow legal standard, we reverse for the court to submit the matter to the arbitrator for clarification of the amount of the award pursuant to § 27-5-217, MCA.  We affirm the court's refusal to grant Sutey its attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     Sutey is a Conoco fuel distributor based in Butte, Montana.  Monroe entered into an "Account Agreement" with Sutey soon after acquiring a Helena gas station and convenience store in the summer of 2010. The agreement provided that Monroe would pay Sutey's "applicable established price in effect on the date of purchase."  Consistent with industry practice, Monroe paid for its fuel purchases by transferring its daily credit card proceeds to Sutey, which applied the proceeds to Sutey's account with Conoco.  When Monroe's credit card proceeds were insufficient to cover the cost of fuel that Sutey delivered, Sutey would request, and Monroe would approve, an Electronic Funds Transfer (EFT) from Monroe's bank account to Sutey's bank account.

¶3     It is undisputed that Monroe did not always have adequate funds to complete the requested EFT.  There also were occasions when Monroe refused to authorize or delayed

2

the EFT. By the summer of 2014, Monroe was unable to pay for a series of six loads of fuel that Sutey delivered. When Monroe resolved only one of the six invoices, Sutey filed a complaint in District Court in early 2015. Monroe changed to a new fuel supplier that summer. The parties stipulated to arbitration in September 2018, after three years of litigation.

¶4     The Arbitrator held a two-day hearing in August 2020. Sutey sought to recover the value of the unpaid fuel invoices, interest from June 2014 at the contractual rate of eighteen percent, and the value of "prompt pay" discounts it credited Monroe that were not earned because of untimely payment. Monroe had filed a seven-claim counterclaim but, after it voluntarily withdrew three claims and the Arbitrator dismissed two others, Monroe's claims proceeded on a theory of breach of contract and breach of the implied covenant of good faith and fair dealing. Monroe claimed that Sutey over-charged it for fuel throughout the term of their agreement and failed to provide an accounting for the debt Sutey claimed Monroe owed.

¶5     The Arbitrator entered his written determination approximately three months after the hearing.[1] He found that Monroe did not pay for five loads of fuel that Sutey delivered in the summer of 2014, totaling $220,750.43. The Arbitrator rejected Sutey's claim for recovery of prompt pay discounts it had given Monroe, concluding that "it became Sutey's

---

[1] In his determination, the Arbitrator observed that, for reasons about which he was "not entirely clear," the transcript of the arbitration hearing was not ordered. He therefore relied on his "recollection, documentary evidence and the notes recorded by the Arbitrator during the course of the two day hearing." It does not appear that the transcript was submitted to the District Court, but Sutey obtained and filed it with this Court as part of the record on appeal.

3

'course of dealing' with [Monroe] to extend those discounts, even if unearned." The Arbitrator also rejected Monroe's counterclaims, determining that Sutey did not over-charge Monroe for any fuel or refuse to provide an accounting. The Arbitrator finally rejected Sutey's claim for compound interest, ruling that the Account Agreement did not call for compound interest and Sutey therefore was entitled to simple interest at the agreed rate of eighteen percent. With the interest added through October 27, 2020, the total judgment amounted to $472,333.34.

¶6 The day after the Arbitrator issued his written decision, counsel for Monroe e-mailed Sutey and the Arbitrator to request a conference call to discuss a mathematical error Monroe believed the Arbitrator made in the final decision. Monroe represents that the Arbitrator spoke with the parties' counsel that same day and told them he would review the underlying documents to evaluate whether he had made an error. But the next day, before the Arbitrator had responded to Monroe's request, Sutey moved the District Court to confirm the award and enter a judgment. A week later, the court entered judgment confirming the award and accrued interest, together with contractual post-judgment interest at the daily rate of $108.86.

¶7 Monroe then moved the District Court to either modify or vacate the arbitration award. The court granted Monroe's request for partial stay on execution of the judgment while the motion was pending. After considering both parties' briefs, the District Court declined to modify or vacate the award. Noting the extremely narrow constraints on a court's review of arbitration rulings, the court refused to consider any evidence beyond the face of the Arbitrator's decision and concluded that it lacked power to review his rulings

4

on the merits. The court determined that it was unable to find an evident miscalculation from the face of the Arbitrator's award without resorting to "extrinsic sources," which it could not consider. Whether Monroe was entitled to certain credits or discounts involved "legal and factual determinations by the arbitrator" on the merits that the court was not empowered to review. The District Court thus denied Monroe's motion and dissolved the stay of execution. It refused, however, to grant Sutey's request for attorney fees and costs on the asserted ground that Monroe had multiplied the proceedings unreasonably and vexatiously.

## STANDARD OF REVIEW

¶8 Montana's Uniform Arbitration Act (UAA) strictly limits a district court's review of an arbitration award. *Tedesco v. Home Sav. Bancorp, Inc.*, 2017 MT 304, ¶ 11, 389 Mont. 468, 407 P.3d 289 (citing *Paulson v. Flathead Conservation Dist.*, 2004 MT 136, ¶ 24, 321 Mont. 364, 91 P.3d 569; *Geissler v. Sanem*, 285 Mont. 411, 415, 949 P.2d 234, 237 (1997)). We review a district court decision on an arbitration award like any other district court decision, considering questions of law de novo. *Tedesco*, ¶ 11. We review for an abuse of discretion the court's ultimate decision to confirm an arbitration award. *Tedesco*, ¶ 11 (citing *Colstrip Energy L.P. v. N.W. Corp.*, 2011 MT 99, ¶ 18, 360 Mont. 298, 253 P.3d 870).

## DISCUSSION

¶9 "When a matter has been submitted to binding arbitration, courts are not permitted to review the merits of the controversy, but may only confirm, vacate, modify, or correct an arbitration award pursuant to §§ 27-5-311, -312, and -313, MCA." *Colstrip Energy*,

5

¶ 17, (citing *Dick Anderson Constr., Inc. v. Monroe Constr. Co., LLC*, 2009 MT 416, ¶ 26, 353 Mont. 534, 221 P.3d 675). The party seeking to vacate, modify, or correct an arbitration award bears the burden to prove that one of the statutorily enumerated grounds exists. *Colstrip Energy*, ¶ 17 (citations omitted).

¶10 Section 27-5-313, MCA, allows the court to modify or correct an arbitration award in narrow and limited circumstances. As pertinent here, § 27-5-313, MCA, provides:

> (1) Upon application made within 90 days after delivery of a copy of the award to the applicant, the district court shall modify or correct the award if:
> (a) there was an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award[.]

¶11 Monroe does not dispute that its unpaid invoices totaled the $220,750.43 figure the Arbitrator awarded. It maintains, however, that the Master Report Sutey's Chief Financial Officer compiled—which the Arbitrator manifestly accepted as the basis for the award—identified undisputed corrections and credits that the Arbitrator evidently did not deduct in making the final mathematical calculation. Monroe insists that it is not challenging the Arbitrator's rejection of its defenses and counterclaims but seeking only to correct the evident miscalculation the Arbitrator made when he did not apply "the amount that Sutey's Master Report and experts acknowledged was a 'reduction to the balance owed.'"[2]

¶12 Sutey responds that both parties argued for credits or adjustments to the invoice total and that the Arbitrator found neither party entitled to any of the claimed discounts, credits,

---

[2] Monroe has narrowed its contentions considerably on appeal. Before the District Court, Monroe alleged numerous defects with the Arbitrator's decision and attached voluminous exhibits. The District Court properly rejected most of Monroe's arguments as outside the scope of a court's review authority, and Monroe does not challenge those rulings.

or unreconciled items. Sutey concludes that the principal award amount reflects the undisputed total of the five unpaid invoices, "was based on expert and lay testimony and substantial documentation," and was not a miscalculation.

¶13 This Court may consider Monroe's claim only if the Arbitrator's determination is an "evident miscalculation of figures." Section 27-5-313(1)(a), MCA. We have not interpreted this phrase of Montana's Uniform Arbitration Act, but a review of other authorities confirms that it sets a narrow standard. The District Court concluded that it could look only to the "face" of the Arbitrator's award and not to any other "extrinsic evidence." It thus declined to consider any of the documents Monroe submitted from the arbitration record.

¶14 Courts are uniform that an "evident miscalculation" is a mathematical error that must be "clear, conclusive, or undisputable." *E.g.*, *Jones v. Summit Ltd. P'ship Five*, 635 N.W.2d 267, 271-72 (Neb. 2001). It is, not—for example—the "use of an incorrect formula to determine an award" (*N. Blvd. Plaza v. N. Blvd. Assocs.*, 526 S.E.2d 203, 205-06 (N.C. App. 2000)); "a legal error in the elements or measure of damages when making the award" (*Cedillo v. Farmers Ins. Co.*, 345 P.3d 213, 221 (Idaho 2015)); "a *misinterpretation* of the evidence by the arbitrators" or "a deliberate choice rejecting certain items of evidence" (*Severtson v. Williams Constr. Co.*, 220 Cal. Rptr. 400, 404 (Cal. Ct. App. 1985) (emphasis in original)); the "arbitrators' adoption of particular substantive positions" (*Dadak v. Commerce Ins. Co.*, 758 N.E.2d 1083, 1085-86 (Mass. App. 2001)); or other error of fact by the arbitrator (*Santa Clara-San Benito etc. Elec. Contractors' Assn. v. Local Union No. 332*, 114 Cal. Rptr. 909, 912 (Cal. Ct. App. 1974)) (all internal citations

7

omitted).  The law also is clear that a court may not hear additional evidence from the parties in determining whether the award contains an "evident miscalculation."  *E.g.*, *D.W. Caldwell, Inc. v. W.G. Yates & Sons Constr. Co.*, 242 So. 3d 92, 99-100 (Miss. 2018); *Severtson*, 220 Cal. Rptr. at 404 (noting that "[n]o provision is made for any inquiry, the production of proofs, or any trial" (quoting *Matter of Hermance et al.*, 71 N.Y. 481, 485-86 (1877))).

¶15    Courts divide, however, on the extent to which a reviewing court may consider the record before the arbitrator.  *See Mid Atl. Capital Corp. v. Bien*, 956 F.3d 1182, 1204 (10th Cir. 2020) (holding that "[9 U.S.C.] § 11(a) [of the Federal Arbitration Act] allows district courts to correct only those evident material miscalculations of figures that appear on the face of the arbitration award"); *Mike's Painting v. Carter Welsh*, 975 P.2d 532, 535-36 (Wa. Ct. App. 1999) (stating, "[a] reviewing court does not consider the merits of the case or the evidence presented to the arbitrator" but must limit its review "to the face of the award"); *cf. Severtson*, 220 Cal. Rptr. at 404 (noting, "The miscalculation, to be evident, must appear *on the face* of the award . . . or be so readily apparent from the documentation in the case that explanation by proofs is not necessary") (emphasis in original); *D.W. Caldwell, Inc.*, 242 So. 3d at 100 (holding that "the 'evident' (plain, obvious, or clearly understood) miscalculation must be apparent from nothing more than the four corners of the award and the contents of the arbitration record"); *Prestige Ford v. Ford Dealer Computer Servs.*, 324 F.3d 391, 396-97 (5th Cir. 2003) (noting that "an 'evident material miscalculation' occurs 'where the record that was before the arbitrator demonstrates an

unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award'") (all internal citations omitted).

¶16 This Court has narrowly construed the authority of a reviewing court under Montana's Uniform Arbitration Act. Like other courts, we have held that "the Montana Uniform Arbitration Act clearly does not authorize judicial review of arbitration awards on the merits of the controversy." *Paulson*, ¶ 24 (quoting *Duchscher v. Vaile*, 269 Mont. 1, 5, 887 P.2d 181, 184 (1994)). We have observed "that a court's power to vacate an arbitration award must be extremely limited because an overly expansive judicial review of arbitration awards would undermine the litigation efficiencies which arbitration seeks to achieve." *City of Livingston v. Mont. Pub. Emps. Ass'n ex rel. Tubaugh*, 2014 MT 314, ¶ 14, 377 Mont. 184, 339 P.3d 41. "Under our narrow standard of review of arbitration awards, [for example,] we cannot overturn an award simply because the arbitrator may have misapplied the law." *Terra West Townhomes, L.L.C. v. Stu Henkel Realty*, 2000 MT 43, ¶ 37, 298 Mont. 344, 996 P.2d 866 (citation omitted). We agree, consistent with this construction, that an "evident miscalculation of figures" must be a mathematical error that is obvious and unmistakable rather than an alleged mistake that requires a court to receive additional evidence or to re-weigh evidence and testimony from the arbitration record.

¶17 Reviewing the Montana Arbitration Act as a whole and considering the varied approaches of courts around the country, we concur with the California courts' articulation that to be "evident," a mathematical error must appear on the face of the award "or be so readily apparent from the documentation in the case that explanation by proofs is not

9

necessary." *Severtson*, 220 Cal. Rptr. at 404.[3]   The California court's explanation illuminates that, although the District Court was correct in concluding that it could not consider extrinsic evidence, "extrinsic" in this context means outside the arbitration record. *See Severtson*, 220 Cal. Rptr. at 404.  We have observed that,

> [T]he Uniform Arbitration Act sets forth two procedures for correcting an error in an arbitration award—§ 27-5-217, MCA, which provides for the modification or correction of an award by the arbitrators if application is made within 20 days, and § 27-5-313, MCA, which provides for the modification or correction of an award by a court if application is made within 90 days.

*Dick Anderson*, ¶ 34.  As Monroe points out, § 27-5-217, MCA, allows an arbitrator to modify the award subject to the same limitations as the district court. Section 27-5-217, MCA, provides in full:

> On the application of a party or, if an application to the court is pending under 27-5-311, 27-5-312, or 27-5-313, on submission to the arbitrators by the court under conditions that the court may order, the arbitrators may modify or correct the award *upon the grounds stated in 27-5-313(1)(a) and (1)(c) or for the purpose of clarifying the award*. The application must be made within 20 days after delivery of the award to the applicant. Written notice must be given immediately to the opposing party, stating that the opposing party must serve the party's objections to the award, if any, within 10 days from the notice. A modified or corrected award is subject to the provisions of 27-5-311 through 27-5-313.

(Emphasis added.)  Were we to hold that § -313(1)(a) precludes a court from considering anything in the arbitration record, the arbitrator too would be so precluded by operation of § -217's incorporation of the same limitation.   Arbitrators thus would be directed to

---

[3] Sutey does not defend the District Court's ruling that it could not look beyond the "face" of the award, except to remark without citation that the court's review "was limited by statute and a plethora of explanatory case law on this exact procedure."

10

disregard the very evidence that formed the basis for their decisions. Such a construction would be wholly unreasonable and would undermine what we have recognized as an arbitrator's "broad authority and powers to determine all issues." *Tubaugh*, ¶ 14 (quoting *Paulson*, ¶ 22).

¶18 Monroe's appeal presents an appropriately narrow question that arises from the face of the award. The Arbitrator's decision explains that he accepted the Master Report and the explanation of it from Sutey's witnesses. The Arbitrator referenced the Master Report several times and relied on the testimony of Sutey witnesses Colleen Vallely and Ben Yonce, finding that "their opinions and conclusions were largely uncontroverted." The Arbitrator noted Vallely and Yonce's testimonies "that the Master Report represents a comprehensive collection of every transaction between the parties, and that each data point is supported by tangible evidence, such as invoices, bank records and fuel delivery logs." The Arbitrator added that Monroe "was unable to offer any credible evidence that the Master Report was incorrect."

¶19 At the end of the discussion, the Arbitrator addressed the two items listed in the Master Report that he rejected: first, the "part of Sutey's claimed damages [for] repayment of prompt payment discounts to Sutey that [Monroe] allegedly did not earn" and second, Sutey's calculation of compound interest. As to the former, the Arbitrator reasoned that "testimony at the hearing indicated that [Monroe] was receiving the prompt pay discount, even when not earned, throughout the course of the five-year contract." Because of the parties' "established course of dealing," the Arbitrator explained, it would be inappropriate to disallow those discounts on the "simpl[e] presum[ption that] something else was

11

intended or a mistake was made." Regarding the latter, the Arbitrator concluded, "The Account Agreement does not specify compound interest and simple interest at 18% will be awarded based on Sutey's damages."

¶20 Sutey argues that the award amount of $220,750.43 was not a miscalculation but based on the evidence. It claims the Arbitrator "even noted that discounts, credits, and other offsets would not be applied for either party" and characterizes Monroe's contrary argument as "dishonest and vexatious." But as Monroe points out, the face of the award does not say that discounts would not be applied for "either party." It says that Sutey would not recover reimbursement for prompt payment discounts it claimed Monroe was given but had not earned. That item is one of five listed on the Master Report summary page, identified as "Discounts Given/Not Earned." Another one among the five is the "Finance Charges per Contract" showing compound interest. These are the two items the Arbitrator rejected from the Master Report. A third item is the "Balance Due from 5 Unpaid 2014 Invoices"—in the amount of $220,750.43. The other two items are "Net Discrepancies/Corrections" and "Discounts Earned/Not Given," for both of which Vallely calculated Monroe was entitled to credit, in the respective amounts of $33,892.93 and $20,025.04. Deducting those amounts from the five invoice totals would leave a balance due of $166,832.46.

¶21 The face of the award reveals the Arbitrator's acceptance of Sutey's Master Report, with the two exceptions described. The Master Report summary, "readily apparent" from the documentation on which the Arbitrator relied, reveals his failure to apply the credit Sutey's Chief Financial Officer determined Monroe was due. This appears to be a

mathematical miscalculation of the award from the facts the Arbitrator found. If the face of the award suggested that the Arbitrator decided not to give Monroe credit for those two items, there would be no "evident miscalculation of figures"—even if the Arbitrator was wrong in his decision. But the award appears to say the opposite, adopting Sutey's report and finding the course of dealing to control Monroe's receipt of customary discounts. *Compare Riha v. Smulcer*, 843 S.W.2d 289, 293 (Tex. App. 1992) (concluding that an "evident miscalculation of figures would be present if the arbitrator had clearly shown the total amount of credits to be subtracted from the award and then awarded a different amount . . . because of a math error" but noting "[t]hat did not occur" when the arbitrator had not indicated how he determined the amount included in the total award, as it was "possible the arbitrator subtracted all or some of the credits before determining the [stated] amounts").

¶22 Monroe attempted timely to seek the Arbitrator's clarification but was cut short by Sutey's District Court filing. Monroe then timely sought modification in the District Court. Section 27-5-217, MCA, permits a court considering confirmation, modification, or vacatur of an arbitration award to submit the matter to the arbitrator, "under conditions that the court may order," for modification, correction, or clarification. Given Monroe's aborted attempt to seek such clarification, we conclude that submission to the Arbitrator would be the best course of action. We agree that to the extent the Arbitrator made "factual and legal decisions" on Sutey's claimed damages and Monroe's discounts, neither the reviewing court nor the Arbitrator may re-evaluate those decisions. The same is true if the "correction" Monroe seeks would in fact be "a revision in substance," removing an element

13

of damages the Arbitrator included in the award as rendered. *See Severtson*, 220 Cal. Rptr. at 404 (quoting *Banks* v. *Milwaukee Ins. Co.*, 55 Cal. Rptr. 139, 142 (Cal. App. 1966) (observing that the "correction" sought "was no mere recalculation, but a revision in substance, adding an element of damages not covered . . . in the award as rendered")). The Arbitrator may clarify, however, whether the total award simply miscalculated Sutey's damages by neglecting to subtract the two items in the Master Report for which Sutey—and the Arbitrator—determined Monroe was entitled to credit.[4]

¶23    Sutey's cross-appeal for attorney fees depends on a determination that Monroe's "costly extension of these proceedings" is "vexatious and duplicative." The District Court reasoned that Monroe's "hand was forced to some degree by Sutey's choice to obtain a judgment (and then execute on that judgment) long before the ninety-day period for challenging the arbitration award had run." As we have found merit in Monroe's appeal, we are unpersuaded by the cross-appeal.

## CONCLUSION

¶24    We reverse the District Court's order denying Monroe's motion to amend the arbitration award and remand for submission to the Arbitrator, under such conditions as the court may direct, to clarify the Arbitrator's mathematical calculation of the award to Sutey. We affirm the District Court's denial of Sutey's motion for an award of attorney fees.

/S/ BETH BAKER

---

[4] Because a clarification by the Arbitrator could affect the final amount of damages, we do not address Monroe's additional argument regarding prejudgment interest on the award.

14

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE