FILED

07/26/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0604

DA 21-0604

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2022 MT 149

M.K. WEEDEN CONSTRUCTION, INC.,

Applicant and Appellee,

v.

SIMBECK AND ASSOCIATES, INC.,

Respondent and Appellant.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV-21-204C
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Matthew A. Haus, Tarlow Stonecipher Weamer & Kelly, PLLC, Bozeman,
Montana

For Appellee:

Fred Simpson, Jenks & Simpson, P.C., Missoula, Montana

Submitted on Briefs:   May 11, 2022

Decided:   July 26, 2022

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Simbeck and Associates, Inc. (Simbeck) appeals from the Findings of Fact, Conclusions of Law, and Order (Order) entered by the Eighteenth Judicial District Court, vacating the Arbitrator's Interim Award and Final Award, and requiring the parties to resubmit their dispute to arbitration before a new arbitrator.  The issues on appeal are:

> *1.  Did the District Court err by vacating the Arbitrator's award and ordering a new arbitration?*
>
> *2.  Is Simbeck entitled to attorney fees incurred in litigation before the District Court and on appeal?*

We reverse the District Court's Order and remand for a determination of attorney fees incurred by Simbeck in defense of the arbitration award before the courts.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     In April 2019, M. K. Weeden Construction, Inc. (Weeden), entered into a contract with Stillwater Mining Company to raise the embankments on a tailings storage facility at the East Boulder Mine near Nye, Montana.  In October 2019, Weeden and Simbeck entered a contract (Subcontract) for Simbeck to install a geosynthetic lining system on the slopes of the new embankment.  Despite the Subcontract being signed in October, it was originally contemplated that this work would occur in late summer and early fall; the Subcontract itself did not provide a timeframe or deadline by which Simbeck would complete the project.  Delays on the project ensued to the extent that most of Simbeck's work was pushed into the winter months, and harsh weather conditions limited the work Simbeck could perform on the site.  Weeden and the mine owner became concerned about Simbeck's pace

2

on the project and, without informing Simbeck, Weeden contracted with H2J Installers (H2J) to perform the same lining work Simbeck had contracted to perform. When Simbeck learned that H2J had been hired to perform the same work, and believing Weeden intended to replace Simbeck with H2J, Simbeck removed its equipment and workers from the project. Simbeck conveyed to Weeden that it would return to the project upon certain conditions, but Weeden refused and terminated the Subcontract by invoking the Subcontract's default provision.

¶3      In January 2020, Simbeck filed a demand for arbitration, pursuant to the Subcontract, with the American Arbitration Association (AAA). Weeden filed a counterclaim, resulting in both parties claiming the other had breached the Subcontract and the covenant of good faith and fair dealing, among other claims. At a preliminary hearing with the Arbitrator, the parties agreed the Arbitrator would issue a "reasoned award"—a reference to the form of decision. This stipulation of the parties was reflected in the Arbitrator's scheduling order. After a proceeding on the merits, the Arbitrator issued an Interim Award, concluding that Weeden materially breached the contract when it hired H2J to perform the same work as Simbeck.[1] The Interim Award awarded Simbeck $337,431.40 in damages. After consideration of attorney fees and costs, the Arbitrator issued a Final

---

[1] The Arbitrator also concluded Weeden had breached the covenant of good faith and fair dealing by withholding certain payments from Simbeck. The parties placed little significance on this determination before the District Court or on appeal, and, therefore, we do not further address it.

Award, which awarded Simbeck an additional $198,032 in attorney fees and $62,314.83 in various other costs, thus rendering a total award of $597,778.23.

¶4 Weeden filed a petition to vacate the arbitration award in the District Court, and Simbeck responded with a motion to confirm the award. After a hearing, the District Court vacated the award, concluding the Arbitrator exceeded his authority by issuing an Interim Award that did not satisfy the standards for a "reasoned opinion" because it did not contain "a shred of legal analysis or 'discussion of the law as applied to the facts of the case,'" did not specifically reference which part of the Subcontract Weeden had breached, and improperly relied on the parties' subjective opinions regarding the Subcontract. The District Court vacated the Interim and Final Awards and ordered the parties to again submit the dispute to arbitration before a new arbitrator.

**STANDARD OF REVIEW**

¶5 "Montana's Uniform Arbitration Act [(MUAA)] strictly limits a district court's review of an arbitration award." *Sutey Oil Co. v. Monroe's High Country Travel Plaza, L.L.C.*, 2022 MT 50, ¶ 8, 408 Mont. 69, 506 P.3d 310 (citing *Tedesco v. Home Sav. Bancorp, Inc.*, 2017 MT 304, ¶ 11, 389 Mont. 468, 407 P.3d 289). "We review district court decisions on arbitration awards like any other district court decision, accepting findings of fact that are not clearly erroneous but deciding questions of law de novo." *Tedesco*, ¶ 11 (citing *City of Livingston v. Mont. Pub. Emps. Ass'n ex rel. Tubaugh*, 2014 MT 314, ¶ 11, 377 Mont. 184, 339 P.3d 41). "A finding is clearly erroneous if it is not supported by substantial evidence, the district court misapprehended the effect of the

4

evidence, or our review of the evidence convinces us that the district court made a mistake." *In re Marriage of Tummarello*, 2012 MT 18, ¶ 21, 363 Mont. 387, 270 P.3d 28 (citation omitted). "We review for an abuse of discretion the court's ultimate decision to confirm an arbitration award." *Sutey Oil*, ¶ 8 (citing *Tedesco*, ¶ 11). "In reviewing whether the District Court abused its discretion in confirming the arbitration award, we apply the law that a court cannot review the merits of the controversy, but may only confirm, vacate, modify, or correct an arbitration award pursuant to §§ 27-5-311, -312, and -313, MCA." *Tedesco*, ¶ 12 (citing *Roberts v. Lame Deer Pub. Sch. Dist. #6*, 2013 MT 358, ¶ 7, 373 Mont. 49, 314 P.3d 647).

**DISCUSSION**

¶6     *1. Did the District Court err by vacating the Arbitrator's award and ordering a new arbitration?*

¶7     Montana law grants to arbitrators broad authority to decide "all issues" of a submitted dispute. *City of Livingston*, ¶ 14 (citation omitted). A corollary is the settled rule that "a court's power to vacate an arbitration award must be extremely limited" because overly expansive review would "undermine the litigation efficiencies which arbitration seeks to achieve." *Sutey Oil*, ¶ 16 (quoting *City of Livingston*, ¶ 14). "As long as an arbitrator's factual determination and legal conclusions derive their essence from the [contract] itself and the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced." *City of Livingston*, ¶ 15 (citing *Sheet Metal Workers Int'l Ass'n, Local No. 359 v. Arizona Mechanical & Stainless, Inc.*, 863 F.2d 647, 653 (9th Cir. 1988)).

5

¶8 The MUAA provides, in relevant part, that a district court shall vacate an award if: "(b) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party; [or] (c) the arbitrators exceeded their powers." Section 27-5-312(1)(b), (c), MCA. We have held that "when an arbitrator is aware of a clearly governing principle of Montana law, and blatantly refuses to follow it," the § 27-5-312(1)(b), MCA, condition is satisfied. *Terra W. Townhomes, L.L.C. v. Stu Henkel Realty*, 2000 MT 43, ¶ 35, 298 Mont. 344, 996 P.2d 866 (quoting *Geissler v. Sanem*, 285 Mont. 411, 416, 949 P.2d 234, 237-38 (1997)). Because an arbitrator's authority is "limited by the bounds of the [arbitration] agreement," arbitrators exceed their power under § 27-5-312(1)(c), MCA, when they issue an award "that extend[s] beyond the contractual scope of arbitration" by "decid[ing] matters which were not submitted to [them]." *Nelson v. Livingston Rebuild Ctr., Inc.*, 1999 MT 116, ¶¶ 14-15, 294 Mont. 408, 981 P.2d 1185 (citation omitted). On the other hand, "'if the remedy fashioned by the Arbitrator has been rationally derived from the [arbitration] agreement it will be upheld on review.'" *Terra W. Townhomes*, ¶ 27 (quoting *Nelson*, ¶ 19).

¶9 Here, the District Court first noted that the briefing submitted during arbitration had made the Arbitrator "aware of the clearly governing principle of Montana law that the standard to apply to determine whether a party materially breached a contract is an objective rather than a subjective standard." *See Davidson v. Barstad*, 2019 MT 48, ¶ 23, 395 Mont. 1, 435 P.3d 640 (quoting 23 Richard A. Lord, *Williston on Contracts* § 63:3 (4th ed. 2018)) ("Whether a breach is material or not is a matter of 'objective reasonableness

6

rather than' the non-breaching party's 'purely subjective belief.'"). The District Court adopted Weeden's position that the Arbitrator wrongly applied a subjective standard in determining whether the breach was material, citing to several paragraphs in the Interim Award:

> 12. Perspective is material to the decision as to which party breached the subcontract agreement.
>
> .   .   .
>
> 21. From [Simbeck's] perspective, it was aware that there was frustration on everyone's part about the speed of the performance of the lining work in November and December. . . .
>
> 22. From [Simbeck's] perspective, when it learned on December 12th from H2J (and not [Weeden]) that H2J was being hired, without notice to or discussion with [Simbeck] to perform lining work on the site, it was reasonable under the circumstances and history of dealings between [Weeden] and [Simbeck], that [Simbeck] believed that [Weeden] was intending to replace [Simbeck] with H2J.
>
> .   .   .
>
> 31. From [Simbeck's] perspective, it was not intending to abandon its contractual obligations with [Weeden]. From [Simbeck's] perspective, the removal of the equipment was a protective measure it was taking in light of the actions of [Weeden].

(Emphasis original.) Noting the references therein to "Simbeck's perspective," the District Court concluded that "[t]he Interim Award is rife with the Arbitrator's findings of [Simbeck's] subjective beliefs, but utterly lacking in the required objective analysis of the material breach issue." However, we do not see this conclusion borne out from a full reading of the Interim Award.

7

¶10    The Arbitrator indeed made findings regarding the parties' subjective beliefs about actions on the project site and interactions with each other, but these were not the ultimate basis for the Arbitrator's findings regarding whether a material breach had occurred. Rather, they provided context for the Arbitrator's ultimate conclusions about breaches of the contract and the covenant of good faith and fair dealing, as reflected in the Arbitrator's finding regarding material breach in Paragraph 19 of the Interim Award: "[w]hile . . . [Weeden] did not intend to breach the subcontract with [Simbeck] by hiring H2J, [Weeden] did breach the subcontract by hiring H2J to perform a material portion of the scope of the [Simbeck] subcontract."   Thus, when read in the context of the entire Award, the Arbitrator's finding was that, despite Weeden's *subjective* beliefs, it *objectively* breached the Subcontract by hiring H2J.   Relative to material breach, Paragraph 19 conveys that (1) Weeden indeed hired H2J; (2) Weeden hired H2J to perform a material portion of the Subcontract, which Simbeck had a contractual right to perform; and (3) in doing so, Weeden materially breached the Subcontract.   These are objective findings regarding material breach that are not dependent upon the parties' subjective views.  *See Ferdig Oil Co. v. ROC Gathering, L.L.P.*, 2018 MT 307, ¶ 12, 393 Mont. 500, 432 P.3d 118 ("The determination of whether a party materially breached a contract is a question of fact.").  We cannot conclude from this review that the Arbitrator "blatantly refuse[d]" to follow established Montana law, and thus the statutory basis for vacatur under § 27-5-312(1)(b), MCA, is not satisfied.  *See Terra W. Townhomes*, ¶ 35; *Tedesco*, ¶ 12.

8

¶11 The District Court also concluded that, under § 27-5-312(1)(c), MCA, the Arbitrator exceeded the power granted to him under the arbitration agreement by failing to issue a "reasoned opinion." As an initial matter, Simbeck argues the District Court erroneously categorized the form of the award the parties requested from the Arbitrator as a "reasoned opinion" rather than a "reasoned award." This point is not insignificant, as much of the District Court's analysis is based upon its determination of what constituted an "opinion." The parties conducted the arbitration pursuant to the AAA Construction Industry Arbitration Rules and Mediation Procedures (AAA Rules). AAA Rule 47(c) provides that parties may "request a specific form of award, including [1] a reasoned opinion, [2] an abbreviated opinion, [or 3] findings of fact, or conclusions of law [sic], but may also agree upon a different form of award," and that "the Arbitrator shall provide the form of award agreed upon." The District Court noted the arbitration scheduling order had provided "[t]he Arbitrator shall issue a Reasoned Award at the conclusion of these proceedings" and found that "[t]he form of award was never changed." Yet, despite finding that a "reasoned award" had been requested by the parties, the District Court then stated, "the parties and the Arbitrator intended and agreed that the Arbitrator would issue a 'reasoned opinion.'"[2]

---

[2] A "reasoned award" is not explicitly mentioned in the version of the AAA Rules used here, but is referenced in previous versions of the AAA Rules and the AAA Commercial Arbitration Rules and Mediation Procedures. *See Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848, 856-57 (Tex. App. 2015). In any event, under AAA Rule 47(c), (1) an alternate form of award can be requested by the parties, and (2) "[a]fter the conclusion of the Preliminary Management Hearing, the parties may not change the form of the award without the arbitrator's express consent" with the arbitrator "confirm[ing] the nature of the change to the form of award." Here, the form of award was never changed from the originally designated "reasoned award."

9

The District Court's finding that the parties requested a "reasoned opinion" clearly contradicts the language of the arbitration scheduling order and must be considered clearly erroneous. *In re Marriage of Tummarello*, ¶ 21.

¶12     Having determined the Arbitrator was obligated to issue a "reasoned award," we next consider whether the Interim Award satisfied that standard.  The AAA Rules do not define a "reasoned award," nor do the parties point to any part of the Subcontract or arbitration proceedings that provided a definition for the term.  Other courts, however, have concluded that a "reasoned award" falls somewhere between an abbreviated or standard award, which simply declares the prevailing party and any damages awarded, and a complete set of findings of fact and conclusions of law.  *Leeward Constr. Co. v. Am. Univ. of Antigua - Coll. of Med.*, 826 F.3d 634, 638 (2d Cir. 2016) (citations omitted) (a "reasoned award" contains something short of findings of fact and conclusions of law but more than a simple result); *Gunnerson*, 477 S.W.3d 848, 858 (citations omitted) ("the detail and specificity required of a 'reasoned award' falls between a standard award and findings of fact and conclusions of law"); *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 474 (5th Cir. 2012) (a "reasoned award" is more than a "simple result" but less than findings of fact and conclusions of law).  While these cases addressed arbitrations conducted under the Federal Arbitration Act, we find their explanations regarding a "reasoned award" to be persuasive.  A "reasoned award" is "an award that is provided with or marked by the detailed listing *or mention* of expressions or statements offered as a justification" for the arbitrator's decision, but less than complete findings of facts and

10

conclusions of law. *Gunnerson*, 477 S.W.3d at 858-59 (quoting *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 844 (11th Cir. 2011)).

¶13 Clearly, the Interim Award issued here by the Arbitrator does more than simply declare a prevailing party and assess damages. The document is over fourteen pages long, including nine pages of the Arbitrator's exploration of the facts and his resolution of the parties' claims, with the remainder providing the Arbitrator's rationale regarding the damages award. Yet, while more than a standard award, the Interim Award is less than a formal set of findings of fact and conclusions of law with citations to legal authority. "[F]indings of fact and conclusions of law are not [a] judgment, but . . . the foundation for [a] judgment." *In re Marriage of Barron*, 177 Mont. 161, 164, 580 P.2d 936, 938 (1978) (citing *State ex rel. King v. Dist. Court*, 107 Mont. 476, 480, 86 P.2d 755, 757 (1939)). "This foundation need not consist of a multitude of evidentiary facts, but must be comprised of ultimate facts." *Wareing v. Schreckendgust*, 280 Mont. 196, 207, 930 P.2d 37, 44 (1996) (quoting *Barron*, 177 Mont. at 164, 580 P.2d at 938). The Interim Award contains the Arbitrator's ultimate factual determinations on the issues for which damages were awarded, most pertinently breach of contract, but omits discussion of other issues, such as Simbeck's claims of constructive fraud and negligent misrepresentation, for which the Arbitrator apparently did not find Weeden liable, and thus was not complete conclusions of law.

¶14 However, we conclude the Interim Award was sufficient to constitute a "reasoned award" under the arbitration rules governing this proceeding. It provided a detailed listing

11

of the Arbitrator's impressions and statements regarding the parties' actions and conduct relative to the dispute, and his legal justification for the granted damage award—namely, that Weeden breached the Subcontract. While at times the Arbitrator's reasoning might not be entirely explicit, it was nonetheless understandable given a fair reading and the deference we afford an arbitrator's decisions. *See City of Livingston*, ¶ 14 ("Montana gives arbitrators broad authority and powers to determine all issues . . . a court's power to vacate an arbitration award must be extremely limited because an overly expansive judicial review of arbitration awards would undermine the litigation efficiencies which arbitration seeks to achieve.") (citation omitted).

¶15 The District Court adopted Weeden's contention that the Interim Award failed to reference specific provisions of the Subcontract or cite to any caselaw, statutes, or other legal authority. These arguments pivot from the question of the award's *form* and instead challenge its *substance*. As noted above, an arbitrator exceeds his authority under § 27-5-312(1)(c), MCA, by issuing an award in a *form* other than that agreed upon by the parties. "Whether an award is a 'reasoned award' is a question of form, not substance." *Gunnerson*, 477 S.W.3d at 859. Aside from whether, pursuant to § 27-5-312(1)(b), MCA, and *Terra West Townhomes*, ¶ 35, the arbitrator "blatantly refuses" to follow established Montana law, we will not overturn an award "simply because the arbitrator may have misapplied the law." *Sutey Oil Co.*, ¶ 16 (quoting *Terra West Townhomes*, ¶ 37). Consequently, unless an arbitrator's lack of citation to legal authority in this form of decision amounts to a blatant refusal to follow established law, it does not, without more,

12

provide a basis to overturn an otherwise proper "reasoned award." The primary legal issue here, and the basis of the Arbitrator's award, was breach of contract. To resolve that issue, the Arbitrator needed, under the arbitration agreement, to apply the facts found from the evidence presented by the parties to the four corners of the Subcontract, which did not necessarily require citation to legal authority under the arbitration rules. *See Ferdig Oil Co.*, ¶ 12. The Arbitrator's general references to the Subcontract were likewise sufficient. The statement that "[Weeden] did breach the subcontract by hiring H2J to perform a material portion of the scope of the [Simbeck] subcontract" is an obvious, though informal, reference to the Subcontract's "Scope of Work" provision. Reading that provision in conjunction with the Arbitrator's reasoning provides a clear explanation for why the Arbitrator deemed Weeden to have breached the Subcontract.

¶16 We thus conclude the Interim Award is in form a proper "reasoned award"—the award the parties agreed to—and the District Court abused its discretion by vacating it pursuant to § 27-5-312(1)(c), MCA. *See Tedesco*, ¶ 12.

¶17 *2. Is Simbeck entitled to attorney fees incurred for litigation before the District Court and on appeal?*

¶18 Simbeck argues that, should it prevail on appeal, it is entitled to attorney fees incurred in the litigation before the District Court and on appeal regarding the arbitration award, pursuant to § 28-2-2105, MCA, part of the Prompt Payment Act. That provision states, in relevant part: "[i]n a civil action on a contract to enforce an obligation imposed by this part, the prevailing party is entitled to reasonable attorney fees and costs, both for trial and appeal." The Subcontract itself does not provide that a prevailing party in the

13

dispute is entitled to attorney fees; rather, fees were awarded by the Arbitrator for fees incurred in arbitration based upon the parties' agreement that the Arbitrator was empowered to award them.

¶19 Weeden argues that in *Terra West Townhomes* this Court concluded that "there is no statutory or contractual basis for an award of attorney fees" under the MUAA, and therefore, absent any contractual agreement, attorney fees before the District Court and on appeal are not proper. *See Terra West Townhomes*, ¶ 41. However, *Terra West Townhomes*, decided in 2000, involved contracts entered between 1995 - 1997. *Terra West Townhomes*, ¶¶ 7-16. These contracts were thus entered before the Prompt Payment Act's effective applicability date of July 1, 1999. *See* 1999 Mt. Laws ch. 470, § 12. This Court was correct in *Terra West Townhomes* that, at the time, there was no statutory basis for attorney fees for those claims. Thereafter, the Prompt Payment Act was enacted, and expressly provides for an award of "reasonable attorney fees and costs, both for trial and on appeal" arising from a civil action to enforce an obligation imposed by the Act. Section 28-2-2105, MCA. Weeden argues:

> The Arbitrator's decision to award attorney's fees was based upon the parties' stipulation that the Arbitrator had authority to award attorney's fees. That stipulation was based on the AAA Rules, which do not apply to the proceeding before the District Court. The proceeding before the District Court was governed by Montana's Uniform Arbitration Act, which does not provide for an award of attorney's fees.

(Internal citations omitted.) However, the MUAA governs only a court's review of the arbitration award itself, and whether attorney fees awarded by the arbitrator for that proceeding were appropriate. *Tedesco*, ¶ 11; *Terra West Townhomes,* ¶ 41. Thus, while

14

Weeden's argument is technically correct regarding an *arbitrator's* authority to award attorney fees, that is not the issue raised here. Rather, the issue is whether Simbeck is entitled to attorney fees stemming from its now successful defense of the Arbitrator's award in litigation before the courts.

¶20 The Court faced the same question in *Dick Anderson Constr., Inc. v. Monroe Constr. Co., L.L.C.*, 2009 MT 416, 353 Mont. 534, 221 P.3d 675. There, we concluded § 28-2-2105, MCA, applied when a party prevailed on an appeal stemming from an arbitrated breach of contract claim. *Dick Anderson*, ¶ 63. We declined to award attorney fees on appeal, however, for the reason such an award would not be "reasonable" pursuant to § 28-2-2105, MCA, when the same party had already benefited from a windfall miscalculation of attorney fees made by the arbitrator. *Dick Anderson*, ¶ 63. That corrective circumstance is not present here, where Simbeck prevailed in arbitration, but was required to defend the award in litigation after it was challenged by Weeden.

¶21 One objective of the Prompt Payment Act is to obligate a contractor to pay its subcontractors. Section 28-2-2102, MCA. The Interim Award awarded Simbeck "the unpaid sums billed for the work performed to date" and related damages, along with a 1.5% interest rate per month until paid. This 1.5% interest rate is derived from § 28-2-2104, MCA, likewise a part of the Prompt Payment Act. Simbeck prevailed in the private arbitration action to enforce Weeden's statutory obligation to pay it for services rendered. By initiating litigation to challenge the award, Weeden assumed the risk of potential imposition of attorney fees and costs under § 28-2-2105, MCA. Because it ultimately

15

prevailed on appeal, Simbeck is therefore entitled to attorney fees and costs reasonably incurred in the litigation pursuant to § 28-2-2105, MCA.

¶22 For the foregoing reasons, the District Court's Order is reversed. We remand the matter with instructions for the District Court to enter judgment confirming the Interim and Final Awards, and for a determination of Simbeck's reasonable costs and attorney fees incurred before the District Court and on appeal.

/S/ JIM RICE

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR

16